346 A.2d 897

Richard J. SINGER, Individually and on behalf of all residents, taxpayers, pedestrians, motor vehicle owners and occupants of the Commonwealth of Pennsylvania, Plaintiff,

v.

William J. SHEPPARD et al., Defendants.

Supreme Court of Pennsylvania.

June 26, 1975.

Rehearing Denied Aug. 1, 1975.

388

390

David S. Shrager, Farage & Shrager, Philadelphia, for appellant.

Gerald Gornish, Deputy Atty. Gen., Dept. of Justice, Harrisburg, for appellee.

John G. Harkins, Jr., Philadelphia, Fred Speaker, Pepper, Hamilton & Scheetz, Harrisburg, for amicus curiae.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*OPINION*

JONES, Chief Justice.

On July 19, 1974, Governor Shapp signed into law House Bill 1973, the Pennsylvania No-fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. —, No. 176, 40 P.S. § 1009.101 *et seq.* (hereinafter No-fault Act). By the enactment Pennsylvania joined the growing number of jurisdictions which have accepted some form of no-fault automobile insurance.

Some four months later, plaintiff, as representative of all others similarly situated, challenged the constitutionality of the No-fault Act by commencing an action in equity and petitioning for a declaratory judgment.[1] Simul-

---

1. The complaint in equity seeks to enjoin the administration, implementation or enforcement of the No-fault Act. The petition for declaratory judgment requests a declaration of unconstitutionality, pursuant to the Pennsylvania Declaratory Judgment Act, Act of June 18, 1923, P.L. 840, *as amended,* 12 P.S. § 831 *et seq.*

taneously, plaintiff sought the assumption by this Court of plenary jurisdiction.[2]

After first denying the petition for plenary jurisdiction, we granted the plaintiff's amended petition limited, however, to the issue of the constitutionality of Section 301(a) of the No-fault Act.[3]

[2] Appellate Court Jurisdiction Act of 1970, § 205, 17 P.S. § 211.205.

[3] Section 301(a) reads as follows:

"(a) Partial abolition.—Tort liability is abolished with respect to any injury that takes place in this State in accordance with the provisions of this act if such injury arises out of the maintenance or use of a motor vehicle, except that:

(1) An owner of a motor vehicle involved in an accident remains liable if, at the time of the accident, the vehicle was not a secured vehicle.

(2) A person in the business of designing, manufacturing, repairing, servicing, or otherwise maintaining motor vehicles remains liable for injury arising out of a defect in such motor vehicle which is caused or not corrected by an act or omission in the course of such business, other than a defect in a motor vehicle which is operated by such business.

(3) An individual remains liable for intentionally injuring himself or another individual.

(4) A person remains liable for loss which is not compensated because of any limitation in accordance with section 202(a), (b), (c) or (d) of this act. A person is not liable for loss which is not compensated because of limitations in accordance with subsection (e) of section 202 of this act.

(5) A person remains liable for damages for non-economic detriment if the accident results in:

(A) death or serious and permanent injury; or

(B) the reasonable value of reasonable and necessary medical and dental services, including prosthetic devices and necessary ambulance, hospital and professional nursing expenses incurred in the diagnosis, care and recovery of the victim, exclusive of diagnostic x-ray costs and rehabilitation costs in excess of one hundred dollars ($100) is in excess of seven hundred fifty dollars ($750). For purposes of this subclause, the reasonable value of hospital room and board shall be the amount determined by the Department of Health to be the average daily rate charged for a semi-private hospital room and board computed from such charges by all hospitals in the Commonwealth; or

(C) medically determinable physical or mental impairment which prevents the victim from performing all or substantially all of the material acts and duties which constitute his usual and customary daily activities and which continues for more than sixty consecutive days; or

(D) injury which in whole or in part consists of cosmetic disfigurement which is permanent, irreparable and severe.

Plaintiff advances three arguments to support his contention that Section 301(a) fails to meet constitutional muster. First, he maintains that the section violates Article III, Section 18, of the Pennsylvania Constitution, P. S., because it limits the damages recoverable by motor vehicle accident victims. Next, he argues that the section violates Article I, Section 11, of the Pennsylvania Constitution because it denies certain accident victims recourse to the courts of the Commonwealth. Finally, he asserts that the section violates the equal protection clause of the Fourteenth Amendment to the United States Constitution because it establishes unreasonable classifications among motor vehicle accident victims.

Any discussion of the constitutionality of lawfully-enacted legislation must commence with the restatement of the principle of law which creates a "presumption" in favor of constitutionality. "An Act of Assembly will not be declared unconstitutional unless it *clearly, palpably* and *plainly* violates the Constitution." *Daly v. Hemphill*, 411 Pa. 263, 271, 191 A.2d 835, 840 (1963). "[T]he burden rests heavily upon the party seeking to upset legislative action on constitutional grounds; all doubt is to be resolved in favor of sustaining the legislation." *Milk Control Commission v. Battista*, 413 Pa. 652, 659, 198 A.2d 840, 843 (1964).[4] *See also Glancey v. Casey*, 447 Pa. 77, 288 A.2d 812 (1972). With the above-quoted principle firmly in mind and for the reasons set out below, we disagree with plaintiff's arguments and sustain the constitutionality of Section 301(a) of the No-fault Act.

(6) A person remains liable for injury arising out of a motorcycle accident to the extent that such injury is not covered by basic loss benefits payable under this act, as described in section 103."

4. Although this principle is given in the context of a Pennsylvania case and with respect to the Pennsylvania Constitution, it is, of course equally applicable to the federal constitutional consideration of state legislation. *See, e. g., Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973).

I.

The parties to this action have very carefully considered the historical cause for Article III, Section 21, of the Constitution of 1874, the predecessor to the present Article III, Section 18. With them we agree that a complete understanding of the section and the boundaries of its proscription is impossible without some historical background.

By the Act of April 4, 1868, P.L. 58, the General Assembly limited the maximum amount recoverable by a plaintiff in a negligence action against a common carrier to $3,000 for personal injuries and $5,000 for injuries resulting in death. The Constitutional Convention of 1872–73 specifically addressed itself to the Act of 1868.[5] Ultimately the Convention drafted and the people accepted Article III, Section 21.[6]

In 1915 the section was amended to permit the enactment of a Workmen's Compensation Act.[7] It is that amended section which concerns us now.[8]

5. II Debates of the Convention to Amend the Constitution of Pennsylvania 727–44 (1873).

6. The relevant parts of that provision read as follows:
"No act of the General Assembly shall limit the amount to be recovered for injuries resulting in death, or for injuries to persons or property; and, in case of death from such injuries, the right of action shall survive . . . ."

7. The amendment for this purpose was apparently unnecessary. A Workmen's Compensation Act was passed prior to the effective date of the amendment and this Court held the Act constitutional *even without the 1915 amendment. Anderson v. Carnegie Steel Co.*, 255 Pa. 33, 99 A. 215 (1916). The Court based its conclusion on the consensual nature of the legislation. Under the original act (and under the present Workmen's Compensation Act, 77 P.S. § 461, *as amended*) an employee was free to choose, at the time of employment, whether to retain his common-law remedies or proceed under the workmen's compensation system in the event of a work-related injury. *But see Dolan v. Linton's Lunch*, 397 Pa. 114, 124, 152 A.2d 887, 893 (1959), where this Court, in dicta, said:

8. See note 8 on page 395.

The pertinent portion of the present damage limitation provisions states:

"The General Assembly may enact [workmen's compensation laws] . . . but in no other cases shall the General Assembly *limit the amount to be recovered* . . . for injuries to persons . . . ." (Emphasis added).

Plaintiff very strenuously, artfully and competently contends that subsection 5 of Section 301(a) unconstitutionally limits the losses recoverable by certain automobile accident victims. That subsection eliminates as a compensable item of damages the "non-economic detriment" incurred by the injured party unless the injured party can place himself or herself within several excepted classifications. Since some individuals' recoverable

"It is only because of Article 3, Section 21, *and* the agreement of the parties, that the limited recovery in a Workmen's Compensation case is valid." (Emphasis added).

The defendants in this matter have resurrected that consent argument. Defendants' Brief, pp. 28–31. They contend that under the No-fault Act a licensed driver freely chooses to operate a motor vehicle on the highways of Pennsylvania. Once that election is made the Commonwealth can regulate the dangers flowing from that freely-made decision and hence can impose on the driver obligatory no-fault coverage.

Without evaluating the realities of any employee's consensual relinquishment of his common-law remedies, we comprehend two important distinctions between the Workmen's Compensation Act and the No-fault Act which militate against any application of the consent rationale of *Anderson, supra.*

First, the consent argument in *Anderson* flowed from a specific provision of the Workmen's Compensation Act that required an actual choice be made at the time of employment. Any similar argument advanced in support of the No-fault Act must rely on an implied consent since under the No-fault Act, coverage is not elective, and, therefore, no actual choice is made.

Secondly, and more importantly, the election of either remedy under the Workmen's Compensation Act does not, *in law*, prevent an individual from working for a particular employer if that employer chooses to hire the individual. However, the "election" not to obtain a no-fault policy precludes an individual from the lawful operation of an automobile in Pennsylvania.

8. The amended Section 21 was renumbered by the Constitution of 1967 to Article III, Section 18. For the remainder of this opinion we will use the present numbering for the sake of clarity.

damages are limited to their economic losses, their recovery for their total actual damages is incomplete to the extent they remain uncompensated for non-economic injury.[9] Hence, plaintiff maintains that Article III, Section 18, is violated.

As we have seen, however, Article III, Section 18, was drafted and approved to invalidate the Act of April 4, 1868, and to prevent the passage of similar legislation in the future. Certainly, "the full scope and meaning of the section should be considered . . . in the light of the evil intended to be remedied by its adoption." *Lewis v. Hollahan*, 103 Pa. 425, 430 (1883). *Cf.* Statutory Construction Act of 1962, 1 Pa. S. § 1921(C) (3) and (5).

The Act of April 4, 1868, placed absolute dollar maximums on the damages recoverable by the negligently injured plaintiff. The No-fault Act, however, allows recovery for proven economic loss without limitation. The effect of the No-fault Act is to create two classes of motor vehicle accident victims, each with different items of compensable damage. But in each class the types of losses, which are compensable, are compensable without limit.[10] The allowance of recovery by one class for an injury and the proscription of recovery by another for what appears to be the same injury presents substantial equal protection questions, which we will consider below.[11]

---

9. Pennsylvania law clearly indicates that non-economic losses are actual losses. *See, e. g., Laurelli v. Shapiro,* 416 Pa. 308, 206 A. 2d 308 (1965), and *Corcoran v. McNeal,* 400 Pa. 14, 161 A.2d 367 (1960).

10. A mathematical formula may be helpful. Assume $x$ = economic losses and $y$ = non-economic losses. The recovery of those victims not within the exceptions enumerated in Section 301(a)(1) through (6) = $x$. The recovery of those victims within one or more of the exceptions, assuming liability can be proven, = $x + y$. Both factors are unknown and as items of damages are limited only by the availability of substantiating evidence.

11. Only the appearance of similarity exists if the latter classification is deemed not to have incurred a "legal" injury. *See* Section

But where two classes remain free to recover without limit the types of injuries assigned to each, no violation of Article III, Section 18, occurs. *See Seymour v. Rossman,* 449 Pa. 515, 297 A.2d 804 (1972).

We are not unmindful of language in Pennsylvania case law which suggests an opposite conclusion. For example, in *Thirteenth and Fifteenth Street Passenger Railway v. Boudrou,* 92 Pa. 475, 482 (1880), this Court, in considering the validity of the Act of April 4, 1868, said: "Nothing less than the full amount of pecuniary damages which a man suffers from an injury . . . fills the measure secured to him in the Declaration of Rights. . . . A limitation of recovery to a sum less than actual damage, is palpably in conflict with the right to remedy by due course of law." [12] However, if the right to a remedy is eliminated by the legislature, this principle is not violated. Nothing in Article III, Section 18, prevents the abolition or modification of a cause of action. *See Sherwood v. Elgart,* 383 Pa. 110, 117 A.2d 899 (1955); *Jackman v. Rosenbaum Co.,* 263 Pa. 158, 106 A. 238 (1919), *aff'd* 260 U.S. 22, 43 S.Ct. 9, 67 L.Ed. 107 (1922); and *McMullen v. Nannah,* 49 Pa.D. & C. 516 (Beaver Co. 1943). The plaintiff concedes this legislative power, Plaintiff's Brief, pp. 22–24, but concludes that the abolition of a cause of action effectuated by Section 301(a) limits the *amount* of recovery for a particular class of motor vehicle accident victims. What Section 301(a) abolishes is the *right* of those injured parties to recover in tort.[13] Admittedly, the determination that

II *infra* and *cf. Jackman v. Rosenbaum Co.,* 263 Pa. 158, 106 A. 238 (1919).

12. The Court spoke in terms of Article I, Section 11, but the words chosen have great force with respect to Article III, Section 18.

13. Consider *Sherwood v. Elgart, supra,* where a tort action was abolished for a very limited group of victims and the abolition was held, without discussion, to be constitutional.
   A somewhat analogous situation exists with respect to trespasses to land which occur in connection with the repair or main-

a particular person retains his or her common-law remedy rests solely on the litigant's ability to place himself or herself within one or more of the exceptions listed in Section 301(a). This, however, speaks again to the reasonableness of the classifications created by Section 301(a), not to the validity of the No-fault Act in relation to Article III, Section 18.

## II.

Plaintiff suggests [13.5] that the elimination of a tort remedy for some accident victims denies them free access to the courts to redress "an injury done [them]," as guaranteed by Article I, Section 11, of the Pennsylvania Constitution.[14] Two possible rationales can be advanced to support this position. First, an individual has a vested right in the maintenance of the status quo of the common law torts. Second, if no vested right in the status quo exists, an individual is guaranteed the right to judicial redress where a particular loss retains the character of a legal injury.

tenance of a party wall. *Jackson v. Rosenbaum Co., supra,* validated the common-law exception that incursions on land for party wall purposes were not injuries which the law recognized. Although the common law originally considered such incursions to be tortious, the general welfare demanded limited abolition of the tort. *Jackman,* 263 Pa. at 175, 106 A. at 244. The law remains so today: Unconsensual invasions of land are torts; unconsensual invasions of land for the erection or repair of a party wall are not.

One could argue that the "victims" in the *Sherwood* and *Jackman* cases have been limited in the amount of their recoveries. Like the victims of minor automobile accidents (under the No-fault Act), the *Jackman* and *Sherwood* victims have been denied their right of recovery.

13.5 See plaintiff's brief at p. 14 and paragraph 22(a) of the complaint, as contained in the record at p. 8a. This argument, while not pressed at length in his brief, was pursued in oral argument.

14. Article I, Section 11, reads: "All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

■ It is clear that Article I, Section 11, can be invoked only with respect to a legal injury. *Jackman v. Rosenbaum Co.*, 263 Pa. 158, 106 A. 238 (1919), *aff'd* 260 U.S. 22, 43 S.Ct. 9 (1922). As we have noted, noneconomic losses have uniformly been viewed as compensable portions of tort recovery.[15] Any conclusion that an individual has a vested right in the continued existence of an immutable body of negligence law would necessitate the invalidation of the No-fault Act as a violation of Article I, Section 11, *and* the due process clause of the Fourteenth Amendment to the Federal Constitution.

However, the practical result of such a conclusion would be the stagnation of the law in the face of changing societal conditions. In 1876, in *Munn v. Illinois*, 94 U.S. 113, 24 L.Ed. 77, the United States Supreme Court recognized that due process was not violated when legislative action modified the common law. The Court ruled:

"A person has no property, no vested interest, in any rule of common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away without due process; *but the law itself, as a rule of conduct, may be changed at the will, or even at the whim, of the legislature, unless prevented by constitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to changes of time and circumstances.*"
(Emphasis added)

94 U.S. at 134.

■ In interpreting Article I, Section 11, this Court reached a similar conclusion when it stated:

"The fundamental principles of the common law, while liable to expansion, are in essence unchangeable,

15. See note 9, *supra*.

but their applicability to given conditions necessarily varies according to changes wrought by usage or statutory enactment; and, pursuing this thought, *what today is a trespass, may, by development of law, not be so tomorrow.* Therefore, it will not do to say (as plaintiff does), since, once upon a time, at common law [an event] would have been a tort, giving rise to a claim for damages . . . [when], *under present conditions,* the law views [the event] as constituting no wrongful . . . act."

*Jackman,* 263 Pa. at 175, 106 A. at 244.[16] Nothing in Article I, Section 11, therefore, prevents the legislature from extinguishing a cause of action.

Nonetheless, plaintiff suggests that the legislature, by only partially eliminating tort action as a legal injury, recognized that loss as having continued vitality. Since the injury continues to be a legal injury, an individual cannot be precluded from the recovery of adequate compensation through "due course of law." However, Section 301(a) of the No-fault Act totally abolishes any remedy in negligence for those persons not within the classifications excepted. Thus, for relatively "minor" automobile accidents the legislature has chosen to eliminate negligently inflicted damage as a recognizable tort injury.

An analogous legislative abolition of legal injury was considered in *Sherwood, supra.* For the general welfare, the legislature eliminated the liability of an innkeeper for negligently inflicted damage to the personal property of his guests, that is, the tort of trespass to property was eliminated with respect to a limited group

16. *See also Silver v. Silver,* 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929); *Pinnick v. Cleary,* 360 Mass. 1, 271 N.E.2d 592 (1971); *Hanfgarn v. Mark,* 274 N.Y. 22, 8 N.E.2d 47, *appeal dismissed,* 302 U.S. 641, 58 S.Ct. 57, 82 L.Ed. 498 (1937); *McMullen v. Nannah,* 49 Pa.D. & C. 516 (Beaver Co. C.P.1943); and *Bush v. Southwark National Bank,* 8 Pa.D. & C. 27 (Phila.Co.C.P.1926).

of victims.[17]   Similarly, the No-fault Act abolished the right of recovery for a limited group of accident victims for the general good.[18]   The legislature has substituted, in the case of relatively minor accidents, the prompt and sure recovery of economic loss for the delayed and uncertain awards of the courts.

Plaintiff argues that tortious injury has not been totally abolished for all motor vehicle accident victims and that such partial abolition is unconstitutional.   When the class for whom tort has been abolished is defined as a segment of a larger class, plaintiff's argument has some force to it.   *See Dolan v. Linton's Lunch,* 397 Pa. 114, 123–24, 152 A.2d 887, 892 (1959).   But when the class for whom tort is abolished is defined as *all* motor vehicle accident victims incurring minor injuries, the underpinnings of the argument are cut away.[19]   As we noted in the introductory portions of this opinion, we must choose any reasonable interpretation which upholds the constitutionality of the Act.

### III.

In his final argument plaintiff contends that the various classifications established by Section 301(a) of the No-fault Act violate the equal protection clause of the Fourteenth Amendment.   As we recently noted in

17.   See note 13, *supra.*

18.   *See* No-fault Act, Section 102(b).

19.   We can again look to *Sherwood, supra,* for analogy.   In *Sherwood,* the tort under consideration was trespass to personal property.   The legislation in issue abolished trespass to such property when the damage occurred in a limited situation, in which case it was *damnum absque injuria.*   The tort was not abolished for all victims of negligent trespass to personal property, only for those whose property was negligently injured by fire while in the care of an innkeeper.   Nonetheless, all victims of negligent trespass to personal property which occurred while in the care of an innkeeper were denied any remedy in tort.   To that extent abolition was complete.   Under the No-fault Act, tort is abolished for *all* motor vehicle accident victims suffering minor injuries.

*Commonwealth v. Webster,* 462 Pa. 125, 130, 337 A.2d 914, 917 (1975), "the starting point of equal-protection analysis is a determination whether the State has created a classification for the unequal distribution of benefits or imposition of burdens." (Citations omitted.) Here, the classifications clearly formulate a serious distinction between two groups of accident victims—one group retains full common law tort remedy; one must rely solely on its no-fault recovery.

■ Our inquiry, however, cannot conclude with the discovery of unequal treatment. "[T]he Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways." *Reed v. Reed,* 404 U.S. 71, 75, 92 S.Ct. 251, 253, 30 L.Ed.2d 255 (1971), and cases cited therein. Except where an invidious discrimination against a suspected class is at issue [20] or a fundamental right burdened,[21] "a legislative classification must be sustained unless it is 'patently arbitrary' and bears no rational relationship to a legitimate governmental interest." *Frontiero v. Richardson,* 411 U.S. 677, 683, 93 S.Ct. 1764, 1768, 36 L.Ed.2d 583 (1973).[22]

■ Plaintiff concedes that the no-fault classifications involve neither a fundamental right nor a suspected classification. We agree and, therefore, apply the rational relationship test. Before commencing that application, however, we first recognize that "[s]tatutes are commonly intended to serve a complex of purposes . . . [and that] a classification may be imperfect

20. *See, e. g., Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971), and *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1969).

21. *See, e. g., Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L. Ed.2d 551 (1972), and *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972).

22. *See also Jefferson v. Hackney,* 406 U.S. 535, 546, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); and *Railway Express Agency, Inc. v. New* York, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949).

though not wholly devoid of reason." Developments in the Law—Equal Protection, 82 Harv.L.Rev. 1065, 1084 (1969). *Cf. id.* at 1076–87 and cases cited therein.

(a) *Subsection 301(a)(5)(B)*

The most comprehensive distinction created between the two groups of accident victims under the No-fault Act is that resulting from the $750 threshold amount of medical expenses beyond which a victim can sue in tort.[23]

The announced purpose of the No-fault Act as given in Section 102(b) is "to establish at reasonable cost to the purchaser of insurance, a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims." Both groups of accident victims benefit from this general purpose regardless of medical expenses incurred. The difference in treatment is the right or lack thereof to recover non-economic loss. The distinction rests on the legislative determination that accidents necessitating a certain amount of medical treatment are serious injuries entitling the victim to the recovery of general damages *if fault can be shown.* To the extent that legislatively adjudged minor accidents eliminate the need for expensive litigation, the announced purpose of reasonably priced insurance coverage is assisted.

The reasonableness of the particular amount chosen as the point of segregation is a matter peculiarly legislative. The establishment of boundaries for varied treatment is a function oft-performed by the legislature and seldom questioned by the courts. *Goodman v. Kennedy,* 459 Pa. 313, 326–327, 329 A.2d 224, 228–29 (1974).[24] We will

23. This distinction is of keystone importance. Unless a consensual no-fault bill were enacted, invalidation of this means of classification would probably prevent any future re-enactment of a no-fault act.

24. *Goodman* sustained in part the constitutionality of the Pennsylvania Blue Laws. Arbitrary classification had been alleged

not and cannot measure the wisdom of this selection.[25]

(b) *Subsections 301(a)(1) and (3)*

These subsections permit full tort recovery where the accident involves an uninsured vehicle or if the injury is intentionally caused. Obvious reasons exist for these exceptions. First, the state has a legitimate object in seeing that all motorists are covered with adequate insurance. The deterrent effect of the potential of full tortious liability is a rational means of attaining that object. *But see Gaines v. Mohawk Motor, Inc.,* 43 U.S.L. W. 2074 (August 27, 1974). Likewise, the intentional infliction of injury is qualitatively different than that negligently caused and the legislature could reasonably conclude that the possibility of tortious liability could deter such conduct.[26]

(c) *Subsection 301(a)(2)*

with respect to the exception allowing certain stores with fewer than ten employees to do business on Sundays. Numerous cases considering similar legislative boundaries have upheld the enactments as not violative of the equal protection clause. The consistency of sustention evidences the practical impossibility of judicial investigation of any particular limit.

25. We are not unmindful of the opposite result reached by at least two courts of sister jurisdictions concerning similar threshold amounts. The lower courts of Illinois and New York in *Grace v. Howlett,* 40 U.S.L.W. 2437 (January 18, 1972), *affirmed on other grounds,* 51 Ill.2d 478, 283 N.E.2d 474 (1972), and *Montgomery v. Daniels,* 367 N.Y.S.2d 419 (N.Y.1975) (also reported in the *Philadelphia Legal Intelligencer,* Vol. 172, No. 84, May 2, 1975), reasoned that the statewide disparity on medical costs resulted in the unequal availability of tort remedy. We need only point out that the victim voluntarily chooses his own physician and, to the extent that general damages are related to special damages, the same equal-protection argument could be applied to the present tort system.

Also unpersuasive is the argument that clinic patients, who receive care without any or only nominal cost, are totally precluded from the recovery of non-economic loss in even the most serious accident. Nothing in the Pennsylvania Act prevents the valuation of clinic care according to prevailing local fees for similar treatment.

26. *See* Section 301(c) of the Workmen's Compensation Act, *as amended,* 77 P.S. § 411, for a similar exclusion.

This subsection permits the retention of tort action in one instance of products liability. The subsection envisages three situations. First, where the vehicle is defective because of the act or omission of a repairman or a manufacturer, the victim may sue in tort for losses beyond the basic no-fault coverage. Second, where a defective motor vehicle is involved in an accident but the accident does not arise from its use or maintenance as where a car explodes or falls on the victim, the victim must recover solely in tort. Finally, where a defective motor vehicle is operated by a manufacturer or repairman and in connection with his business, the victim-operator must rely solely on no-fault coverage.

In the first situation, tort recovery is permitted to encourage the safe and proper design and repair of motor vehicles. Deterrence again serves as the rationale for upholding the distinction created. *See* R. Keeton and J. O'Connell, Basic Protection for the Traffic Victim, 247–49 (1965).

Tort recovery is permitted in the second situation since the legislature sought through the No-fault Act to aid the victims of motor vehicle accidents.[27] That purpose would not be effectuated by the compensation of an individual injured by an instrumentality which happens to be a motor vehicle but outside the context of a motor vehicle accident. Such an occurrence would be due to the characteristics of the vehicle as a movable or heavy or potentially explosive object, not due to its function as a mode of transportation.

In the final situation, the manufacturer or repairman operating a defective vehicle is treated as any other operator and is limited to his or her no-fault recovery. Unlike the first situation described under subsection 301(a)(2), no deterrent effect is present when the manu-

27. *See* Section 103 of the No-fault Act, "Maintenance or use of a motor vehicle," which defines the term as meaning "maintenance or use of a motor vehicle *as a vehicle*." (Emphasis added.)

facturer or repairman is driving. It could reasonably be assumed that his or her own personal safety would encourage proper design and repair of the vehicle being used and, given that assumption, the legislature could reasonably limit recovery to economic losses.

We, therefore, conclude that the varied exceptions creating two groups of motor vehicle accident victims, one with tort remedies and one without, bear some reasonable relationship to a legitimate legislative objective and are, therefore, not violative of the equal protection clause of the Fourteenth Amendment.

(d) *Subsection 301(a)(6)*

By subsection 301(a)(6) the legislature has permitted the continued existence of tort recovery where the injury results from an accident involving a motorcycle. Our statutes and case law have previously recognized a distinction between motorcycles and other motor vehicles. *See* Section 625.1 of the Motor Vehicle Code, Act of August 13, 1963, P.L. 771, *as amended,* 75 P.S. § 625.1, and *Arnold v. Commonwealth,* 215 Pa.Super. 444, 258 A.2d 885 (1969). The greater likelihood of injury from the operation of a motorcycle due to its relative instability would necessarily increase the no-fault insurance premiums for such operation. It is reasonable to suppose that substantially higher premiums would discourage motorcycle use.[28] The legislature could determine that such discouragement was not in the public interest and, therefore, provide an exception to avoid it.[29]

---

**28.** Prohibitively high premiums which discouraged motorcycle use would defeat one of the announced purposes of the Act: insurance coverage at reasonable cost. *See* subsections 102(a)(9), 102(a)(10) and 102(b).

**29.** Motorcycles are "motor vehicles" for the purpose of compulsory insurance although they are excluded under subsection 301(a)(6) of the Act. *See* Section 103, "Basic loss benefits" and "Motor vehicle." No-fault benefits are, therefore, available to third persons injured by a motorcycle.

The Insurance Department has also proposed regulations covering motorcyclists under which motorcyclists are required to main-

Additionally, as in the case of intentionally inflicted injuries and uninsured motorists, the legislature could have concluded that the potentiality of tort liability would have a deterrent effect on the careless operation of motorcycles.

Finally, legislation need not correct a social problem in its entirety with one totally encompassing enactment. "Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. *The legislature may select one phase of one field and apply a remedy there, neglecting the others.*" (Emphasis added and citations omitted.) *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955). *See* Developments in the Law—Equal Protection, 82 Harv.L.Rev. 1065, 1084–86 (1969).[30]

Having rejected each of plaintiff's positions, we conclude that Section 301(a) of the No-fault Act is compatible with both the Pennsylvania and United States Constitutions. Accordingly, we remand the matter to the Commonwealth Court for further action consistent with this opinion.

ROBERTS, J., filed a concurring opinion in which POMEROY, J., joins in part.

NIX, J., filed a concurring opinion.

tain guest passenger coverage and basic loss benefits for pedestrians and other persons eligible to receive such benefits. 5 Pennsylvania Bulletin 445 (March 8, 1975).

**30.** Plaintiff has also cited the unequal treatment of buses and trolleys under the No-fault Act. The simple response is that trolleys are not motor vehicles. Motor Vehicle Code, Act of April 29, 1959, P.L. 58, § 102, *as amended*, 75 P.S. § 102, and, as defendants' brief states, "[t]he line had to be drawn somewhere. . . ." Defendants' brief, p. 58. *See also* the last paragraph of the discussion of subsection 301(a)(6), pp. 18–19, *supra.*

EAGEN, J., filed a dissenting opinion.

O'BRIEN, J., filed a dissenting opinion.

MANDERINO, J., filed a dissenting opinion.

EAGEN, Justice (dissenting).

It is clear to me that Section 301 of the Pennsylvania No-Fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. ——, No. 176, 40 P.S. § 1009.101 et seq. limits the amount a victim of another's negligence may recover in damages, and hence, is violative of Art. III, Section 18 of the Constitution of this Commonwealth.

I agree with the Chief Justice that the historical background of Art. III, Section 18 is necessary for a complete understanding of its proscriptions. Let us explore this background in more detail.

By the Act of April 4, 1868, P.L. 58, the General Assembly of Pennsylvania limited the maximum amount recoverable by a plaintiff in a negligence action against a common carrier to $3000 for personal injuries and $500 for injuries resulting in death. To nullify this unfair restriction on the amount recoverable for injuries caused by the negligence of common carriers, the Constitutional Convention of 1872–1873 adopted Art. III, Section 21, the predecessor to the present Art. III, Section 18. It provided as follows:

*"No Act of the General Assembly shall limit the amount to be recovered for injuries resulting in death, or for injuries to persons or property; and, in case of death from such injuries, the right of action shall survive,* and the General Assembly shall prescribe for whose benefit such actions shall be prosecuted. No act shall prescribe any limitations of time within which suits may be brought against corporations for injuries to persons or property, or for other causes, different from those fixed by general laws regulating actions

against natural persons, and such acts now existing are avoided." [Emphasis added.]

There is no question but that the above constitutional provision was primarily aimed at and concerned with the Act of 1868, supra. However, the debates at the Constitutional Convention clearly demonstrate that the framers of this constitutional provision also intended by this provision to prevent the General Assembly from ever *again* enacting legislation which would impinge upon the right of one injured through the negligence of another to full recovery for the losses suffered.

> "You cannot say that a man who has suffered an injury at the hands of another shall not recover full compensation without committing an outrage upon the elementary principles of justice." 2 *Convention Debates,* p. 740 (Comments of Mr. J. S. Black).
>
> *       *       *       *       *       *       *       *
>
> "The very fact that juries are disposed to give, as he calls it, 'excessive' damages, shows that there is a feeling among the people that something should be done in cases of railroad accidents, to compel the companies, through fear of heavy verdicts against them, to keep their roads in such a condition that these accidents would not be continually occurring." 2 *Convention Debates,* p. 730 (Comments of Mr. Campbell).
>
> *       *       *       *       *       *       *       *
>
> "It is but another way of expressing the same thing, and the remedy that is desired to be applied here, is to *prevent the passage of an Act of Assembly hereafter,* or to prevent any present act of Assembly from limiting the amount of damages . . . . " 2 *Convention Debates,* p. 743 (Comments of H. White) [Emphasis added].

In fact, if the members of the Constitutional Convention were merely concerned with invalidating the Act of 1868, they could have simply repealed that statute. But

they did not restrict themselves to this for they were also concerned with any legislation in the future which would attempt to impose restrictions akin to those enacted in the Act of 1868. And this Court as early as 1883, in *Lewis v. Hollahan,* 103 Pa. 425, recognized this and ruled that the intent of Art. III, Section 21, was not only to nullify any then existing legislation limiting the amount recoverable for personal injury or death caused by the negligence of another, but also to prevent any future legislation to the same effect. In *Lewis v. Hollahan,* supra, we said:

"The purpose of the twenty first section of the third Article of the Constitution was to nullify, as far as possible, then existing legislation limiting the amount to be recovered for injuries resulting in death, or for injuries to persons or property, as well as that limiting the time within which suits could be brought against corporations for injuries to persons or property or for other causes, so far at least as said limitation of time differed from that fixed by general laws regulating actions against natural persons; *and, at the same time, prevent all such legislation in the future.* The phraseology of the section as well as the discussion that took place during the course of its adoption clearly indicates that such was the intention of the framers of the Constitution. It commences by declaring, 'No Act of the general assembly shall limit the amount,' &c. *The language thus employed cannot be fairly restricted to future legislation alone. It is quite as applicable to then existing as it is to prospective legislation.* . . . *It is equivalent to saying: No Act of the general assembly now in force or hereafter to be passed shall limit, &c.*" [Emphasis added.] 103 Pa. at 430.

On November 2, 1915, Art. III, Section 21 of the Pennsylvania Constitution was amended (and became Art. III, Section 18) to permit the enactment of a workmen's com-

pensation law. A constitutional amendment was deemed necessary because such a law would limit the amount recoverable by employees of negligent employers, and hence, would be violative of Art. III, Section 21.[1] This was recognized by this Court in *De Jesus v. Liberty Mutual Insurance Company*, 439 Pa. 180, 268 A.2d 924 (1970), when we stated at 184, 268 A.2d at 926:

> "[T]he purpose of [Art. III] Section 18, as amended, was to permit the General Assembly to enact a workmen's compensation program, but to preclude the enactment of general legislation covering injuries other than those arising in the course of employment."

See also *Dolan v. Linton's Lunch Company*, 397 Pa. 114, 152 A.2d 887 (1959).[2]

The resulting constitutional provision, Art. III, Section 18, which remains intact today provides as follows:

> "The General Assembly may enact laws requiring the payment by employers, or employers and employes jointly, of reasonable compensation for injuries to employes arising in the course of their employment, and for occupational diseases of employes, whether or not such injuries or diseases result in death, and regardless of fault of employer or employe, and fixing the basis of ascertainment of such compensation and the maximum and minimum limits thereof, and providing special or general remedies for the collection thereof;

---

1. In this connection it is interesting to note that the key provisions of the no-fault concepts for motor vehicle accidents are similar to the workmen's compensation laws. Under the Pennsylvania Workmen's Compensation Act, an employee is compensated for his injuries without regard to fault and a set schedule limits the damages recoverable for those injuries. I repeat, to accomplish this a constitutional amendment was necessary.

2. In *Dolan v. Linton's Lunch Company*, supra at 124, 152 A.2d at 893, we said the limited recovery in a workmen's compensation case was valid only because of Art. III, Section 21, of the Pennsylvania Constitution, and that "[i]n all 'other cases' nothing less than full actual damage" would satisfy the provisions of the Pennsylvania Constitution.

*but in no other cases shall the General Assembly limit
the amount to be recovered for injuries resulting in
death, or for injuries to persons or property, and in
case of death from such injuries, the right of action
shall survive, and the General Assembly shall prescribe
for whose benefit such actions shall be prosecuted. No
act shall prescribe any limitations of time within
which suits may be brought against corporations for
injuries to persons or property, or for other causes dif-
ferent from those fixed by general laws regulating ac-
tions against natural persons, and such acts now exist-
ing are avoided."* [Emphasis added.]

The basic provision in Art. III, Section 21, prohibiting
limits on the amount to be recovered for injuries to per-
sons or property or for death remained unchanged in
Art. III, Section 18, except it is significant to note, these
words were added "but in no other cases". This change
in language in the 1915 amendment strengthens the con-
clusion that Art. III, Section 18, is a prohibition on any
limits of recovery in any statute (other than workmen's
compensation) dealing with injuries to persons or prop-
erty, no matter how lofty its objectives.

But say the Chief Justice in his opinion announcing
the judgment of the Court and Mr. Justice Roberts in his
concurring opinion, Section 301 of the Pennsylvania No-
Fault Motor Vehicle Insurance Act, supra, does not place
any limitation on the amount of damages that are re-
coverable in tort actions. Say they, the Act merely abol-
ishes the right of a particular class of motor vehicle acci-
dent victims to recover in tort. Let us examine this posi-
tion.

I admit that nothing in Art. III, Section 18, prevents
the Legislature from abolishing or modifying a cause of
action. Cf. *Sherwood v. Elgart*, 383 Pa. 110, 117 A.2d
899 (1955). I also admit, at least for present purposes,
that the purported purpose of the Pennsylvania No-Fault
Act is to abolish partially tort liability for personal inju-

ries resulting from motor vehicle accidents and to set forth new liability standards for personal injury compensation without regard to fault. But, it is clear as day to me that the effect of the Act is to limit the amount recoverable as damages for pain and suffering whether under a tort or no-fault standard of liability.

Section 301(a) of the Act purports to abolish tort liability for pain and suffering. So far so good. If the Act stopped at this point, I would agree with the position of the Chief Justice and Mr. Justice Roberts. But the Act does not. It goes on to make an exception for cases involving death, serious and permanent injury, certain impairments, and where medical expenses exceed $750. Thus the Act continues to recognize pain and suffering as a substantive loss but limits the situations in which an injury is deemed serious enough to justify an award for it. I submit that this is proscribed by Art. III, Section 18. This constitutional provision speaks to the amount to be recovered for "injuries" and the phrase has been interpreted to mean legally cognizable injury. See *Jackman v. Rosenbaum Co.*, 263 Pa. 158, 106 A. 238 (1919). Accordingly, if the Legislature removes the legal recognition of a certain injury by abolishing the cause of action completely, there would be no violation of Art. III, Section 18. However, where the injury is still recognized such as in the Pennsylvania No-Fault Act, and the Legislature changes the amount of compensation recoverable therefor, such as in the No-Fault Act and in the workmen's compensation cases, then Art. III, Section 18, does apply. The fact that the standard of liability is changed does not affect the fact that the injury is still legally cognizable.

In conclusion, no-fault automobile accident insurance may or may not be in the public good. Time will tell. Regardless, if it is to be effectuated in Pennsylvania, let it be done in a permissible manner.

I dissent.

414

O'BRIEN, Justice (dissenting).

I must respectfully dissent. The majority has concluded that under *Sherwood v. Elgart,* 383 Pa. 110, 117 A.2d 899 (1955), the No-Fault Bill in which the legislature has limited the amount of recovery in automobile accident cases is constitutional. I agree with the rationale of *Sherwood, supra,* but do not find it controlling in the case at bar. In *Sherwood,* the legislature eliminated a cause of action, while in the instant case they have limited the amount recoverable in certain automobile tort actions. The No-Fault Bill does not allow a person with less than $750.00 in medical bills to sue for pain and suffering. Is this not a limitation of recovery prohibited under *Article III, Section 18, of the Pennsylvania Constitution?*

In addition, assuming that the hurdle of Article III, Section 18, of the Pennsylvania Constitution, can be overcome, I am also of the opinion that the No-Fault Bill violates the equal protection clause of the United States Constitution. The majority has concluded that the classifications established in the bill when a person may or may not sue are reasonable and, therefore, pass Constitutional muster. I am not so convinced. I see no rational reason to conclude that a person who has $750.00 in medical bills has suffered so much more than a person with $749.00 in medical bills that the former may sue, while the latter may not. No-Fault will be a source of a tremendous potential for abuse, unnecessary and protracted medical services, inflated charges for medical care, and the discrimination between those able to secure proper medical care and those not as fortunate.

In concluding, I feel constrained to point out that one of the reasons for the passage of the No-Fault Act was the alleged problem of small claims tying up this Commonwealth's civil court system. This is a legitimate concern.

However, several counties within this Commonwealth have established arbitration procedures for small automobile tort claims that have proven very effective in dealing with the problem of court congestion. In establishing the arbitration procedure, the counties have taken steps to eliminate court congestion and yet retained a person's right to recover for his non-economic loss.

Accordingly, I would hold the No-Fault legislation unconstitutional under both the state and federal constitutions.

ROBERTS, Justice (concurring).

I agree that section 301(a) of the Pennsylvania No-fault Motor Vehicle Insurance Act [1] passes constitutional muster, but I desire to set forth my reasons for this conclusion.

Plaintiff's primary argument is that section 301(a) violates article III, section 18 of the Pennsylvania Constitution. I disagree. When that section is examined in the light of the circumstances of its adoption and the evil it was designed to remedy,[2] it is clear that it forbids the Legislature to place a maximum dollar limitation on the amount of damages that are otherwise recoverable in law. It does not limit the power of the Legislature to create or abolish causes of action;[3] to prescribe the es-

---

1. Act of July 19, 1974, P.L. ——, No. 176, § 301(a), 40 P.S. § 1009.-301(a).

2. See *Lewis v. Hollahan*, 103 Pa. 425 (1883); cf. *Tosto v. Pennsylvania Nursing Home Loan Agency*, 460 Pa. 1, 13, 331 A.2d 198, 204–05 (1975); see also Statutory Construction Act, 1 Pa.C.S. § 1921(c)(1)–(4) (Supp.1974).

3. See, e. g., Act of January 28, 1972, P.L. ——, No. 9, § 1, 35 P.S. § 10021 (Supp.1974) (abolishing cause of action in strict liability in tort for death or injury resulting from blood transfusions) (constitutionality sustained in *Bartholomew v. Quakertown Hospital Ass'n*, 25 Bucks L.Rptr. 250 (C.P.), aff'd per curiam, 231 Pa. Super. 724, 327 A.2d 161 (1974)); Act of June 22, 1935, P.L. 450, § 2, 48 P.S. § 171 (1965) (abolishing cause of action for breach of contract to marry); see also, e. g., *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966) (adopting Restatement (Second) of Torts § 402A (1965)).

sential elements of a cause of action; to specify what are recoverable items of damages or legally compensable losses;[4] or to provide under what circumstances a person has a cause of action and what items of damages are recoverable by him in those circumstances.[5] See *Lewis v. Hollahan,* 103 Pa. 425, 430 (1883).[6]

Section 301(a) of the No-fault Act does not place a maximum dollar limitation on the amount of damages that are otherwise recoverable by a person injured in a motor vehicle accident. Rather, it specifies in what circumstances a person has a cause of action for injuries received in a motor vehicle accident and prescribes what items of damages are recoverable by him in those circumstances. Section 301(a)(1), (2) & (3) provides that a tortfeasor remains fully liable in tort under certain cir-

4. See, e. g., Act of October 2, 1959, P.L. 1023, § 4–402, 12A P.S. § 4–402 (1970) (bank's liability to customer for wrongful dishonor of an item is limited to "actual damages proved") (constitutionality of predecessor statute sustained in *Bush v. Southwark Nat'l Bank,* 8 Pa.D. & C. 27 (C.P.Philadelphia, 1926)); see also, e. g., *Hopkins v. Blanco,* 457 Pa. 90, 320 A.2d 139 (1974) (permitting wife to recover for loss of husband's consortium).

5. See, e. g., Act of June 22, 1935, P.L. 450, § 1, as amended by Act of June 25, 1937, P.L. 2317, § 1, 48 P.S. § 170 (1965) (cause of action for alienation of affections permitted in narrowly limited circumstances only) (constitutionality sustained in *McMullen v. Nannah,* 49 Pa.D. & C. 516 (C.P.Beaver County, 1943)); see also, e. g., *Ayala v. Philadelphia Bd. of Public Educ.,* 453 Pa. 584, 305 A.2d 877 (1973) (abrogation of governmental immunity); *Falco v. Pados,* 444 Pa. 372, 282 A.2d 351 (1971) (abrogation of parental immunity); *Niederman v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970) (plaintiff permitted to recover for personal injuries in spite of absence of contemporaneous impact); *Flagiello v. Pennsylvania Hospital,* 417 Pa. 486, 208 A.2d 193 (1965) (abrogation of charitable immunity).

6. "The purpose of [the predecessor to article III, section 18] was to nullify, as far as possible, then existing legislation limiting the amount to be recovered for injuries resulting in death, or for injuries to persons or property . . . . [I]n endeavoring to determine the full scope and meaning of the section, it should be considered, as a whole in the light of the evil intended to be remedied by its adoption. It is very evident that the evil at which it was aimed was the obnoxious statutory limitation as to the amount of damages to be recovered. . . . "

cumstances in spite of the adoption of the Act. Section 301(a)(4) & (6) provides that a tortfeasor is liable for certain particular items of damages notwithstanding the application of the Act. Finally, section 301(a)(5), the keystone of the Act, provides that the item of damages styled "non-economic detriment" is recoverable from a tortfeasor only in a very limited, strictly defined set of circumstances. The salient feature of this arrangement is that, when the Act permits an injured person to maintain an action in tort, and specifies the items of damages that he is permitted to recover, he may recover those items of damages without monetary limit. Therefore, section 301(a) does not violate article III, section 18 of the Constitution.

In addition, upon my reading of the plaintiff's brief, I must conclude, contrary to the conclusion of the opinion of the Chief Justice, that plaintiff has not advanced the argument that section 301(a) violates article I, section 11 of the Constitution. Therefore, I express no views on that issue. Finally, I agree with the opinion of the Chief Justice that section 301(a) does not violate the equal protection clause of the Fourteenth Amendment to the United States Constitution.

Accordingly, I concur in the judgment sustaining the constitutionality of section 301(a) and remanding the case to the Commonwealth Court.

Mr. Justice POMEROY joins in this opinion except to the extent that it expresses no view on the issue of a violation of article I, section 11 of the Constitution of Pennsylvania on the ground that the plaintiff has not advanced that argument.

NIX, Justice (concurring).

I agree with the result reached by the majority. However, because of the importance of this issue and its far reaching effect, I believe it necessary to set forth my reasons for reaching this conclusion.

418

The law is clear that the General Assembly has the power to abolish common law causes of action. *Sherwood v. Elgart*, 383 Pa. 110, 117 A.2d 899 (1955); *Jackman v. Rosenbaum Co.*, 263 Pa. 158, 106 A. 238 (1919). It is also beyond question that a legislature can create new causes of action. While recognizing these powers, the dissenters implicitly suggest that where they are exercised simultaneously and the new remedy provides less coverage than the former, Article III, Section 18 of the Constitution is necessarily violated. With this assumption, I cannot agree.

It is clear from the legislative history surrounding the enactment of Section 301(a) of the Pennsylvania No-Fault Motor Vehicle Insurance Act,[1] and the purposes sought to be achieved by that enactment that the legislature recognized the desirability of eliminating the common law cause of action for pain and suffering from injuries resulting from automobile accidents. It is equally apparent that the legislature also determined the need for a right of recovery for selected classes of individuals. The mere fact that these two objectives were achieved in the same piece of legislation does not justify the conclusion suggested by the dissenters, that this is merely a limitation of a right to recovery which is prohibited under Article III, Section 18.

If we were to embrace the view of the dissenters, the power of the legislature to provide new remedies to replace common law remedies would be severely and unreasonably curtailed. Whenever a cause of action is replaced by a newly created statutory remedy which is not co-extensive or more comprehensive, it could be argued, under their reasoning, that such action would constitute a limitation on the recovery of the former common law cause of action. Such a view would completely stifle progress and severely curtail the right of a legislature to

1. Act of July 19, 1974, P.L. ——, No. 176, 40 P.S. § 1009.101 et seq.

meet changing conditions and current needs. Basic constitutional law rejects such a restrictive interpretation of this provision.

Further, I am in agreement with Mr. Justice ROBERTS that the question of whether Section 301(a) is violative of the provisions of Article I, Section 11 of the Pennsylvania Constitution has not been properly raised in this lawsuit and need not at this time be considered.

Lastly, I am in complete accord with the majority in their conclusion that the Equal Protection Clause of the Federal Constitution is not offended by this legislation. I believe that there is a reasonable basis for providing a right to sue for the specific classes designated under Section 301(a) for this type of loss. The only category that can possibly be questioned is that pertaining to those who sustained medical expenses in excess of $750. As recognized by Mr. Justice MANDERINO, writing for the majority in *Goodman v. Kennedy*, 459 Pa. 313, 329 A.2d 224 (1974), whenever a numerical figure is selected to be the basis of a class, there is some degree of arbitrariness involved:

> "Many other existing laws classify according to a legislatively selected number. A legislatively selected number of dollars divides those who may sue in a particular court from those who may not, a legislatively selected number of years divides those who may successfully be sued on a contract from those who may not; a legislatively selected number of days divides those who may have redress in the courts from those who may not.
>
> .    .    .    .    .    .    .    .
>
> Obviously, somewhere between the number one and the number ten thousand, the line of constitutional validity might be crossed, but we cannot say the line was crossed when the legislature selected 'less than ten.'

The legislature is to be given wide discretion in classifying, and any judicial inquiry into legislative classifications should not concern itself with the wisdom of the legislative choices so long as the choices are reasonably related to legitimate legislative objectives.

.    .    .    .    .    .    .    .

"A legislative classification need not be made with "mathematical nicety." Inequalities may result as long as some reasonable basis is apparent for the classification." *Id.* at 325, 329 A.2d at 230.

However, as he concluded in that case, I believe here the degree of arbitrariness does not reach the extent that would render the section constitutionally infirm.

MANDERINO, Justice (dissenting).

The legislature may bring about a change in the law which it deems advisable by one of two procedures. It may submit a constitutional amendment to the people for approval, or it may approve legislation without submission to the people. In this case the legislature clearly chose an improper procedure, and no amount of semantics can justify the course of action chosen.

The opinion of Mr. Chief Justice Jones and the concurring opinions agree that, without the people's approval, the legislature cannot put a maximum dollar amount on damages recoverable by citizens for injuries. Yet, it is contended that this proposition does not prevent the abolition of a cause of action. The difference may make sense in a parlor word game but not in constitutional law. These opinions in effect claim that a citizen who suffers damages in the amount of $100,000 cannot have the damages limited by legislation to $50,000 (a maximum dollar amount), but can have the damages limited to zero dollars because "nothing" does not constitute a maximum dollar limitation but something else. It's like telling an employee that his employer cannot cut his sala-

ry from $200 a week to $100 a week—but can cut it from $200 to $0.

The Pennsylvania Constitution now provides that,

"All courts shall be open; and every man for any injury done him in his lands, goods, person or reputation *shall have remedy* by due course of law, and right and justice administered without sale, denial or delay." (Article I, Section 11)  (emphasis added).

"The General Assembly may enact [laws]  .  .  . but *in no other cases shall the General Assembly limit the amount to be recovered*  .  .  .  for injuries to persons  .  .  .." (Article III, Section 18) (emphasis added).

I cannot subscribe to such a ludicrous interpretation of these provisions as is put forth by the opinions upholding the constitutionality of the No-Fault Act.