## Snavely v. Brooks

*Neil J. Rovner*, for plaintiff.
*David C. Eaton*, for defendant.

QUIGLEY, *P.J.*, October 10, 1979—This case involves the question of whether or not a plaintiff motor vehicle operator injured by the tortious act of another motor vehicle operator can recover in a common law tort action for the difference between a statutorily authorized net figure paid him by his carrier and his gross wages lost during the period of disability.

It was stipulated that plaintiff's gross weekly income would have been $152 per week from the date of the accident, January 20, 1977, until the date of trial, May 3, 1979, a period of 119 weeks. It was further represented to the court out of the hearing of the jury that plaintiff's no-fault carrier had paid to plaintiff a sum less than $15,000 to the date of trial. However, following trial, the parties have apparently agreed, upon recomputation, that plaintiff's

no-fault carrier had discharged its contractual obligation to plaintiff in full, presumably having paid him $15,000,

The issue of plaintiff's future loss of earning capacity was submitted to the jury and it returned a verdict of $2,745.45 in his favor. Although requested by plaintiff, the court did not submit the issue of plaintiff's lost wages to the date of trial to the jury.

Plaintiff contended that it was proper for the court to instruct the jury to consider wage loss from the date of the accident until the date of trial and to instruct the jury that wages to be considered should be gross wages, undiminished by any deductions such as taxes. Plaintiff offered to prove that his no-fault carrier, pursuant to section 206 of the Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, 40 P.S. §1009.206, deducted 15 percent from his gross weekly wage and that he should be entitled to recover the difference between said net figure and his gross wage from the tortfeasor in this tort action. The court sustained an objection to this offer and presented the issue as previously described to the jury exclusively, mindful of the fact that since the jury was only going to consider future loss of earnings that an issue might be created between the carrier for defendant and plaintiff's no-fault carrier on the respective liabilities of both in view of what the court understood to be a fact that plaintiff's no-fault carrier had not paid $15,000 to the date of trial. It might be stated that had the court been aware of what appears presently to be the case, that the no-fault carrier had in fact discharged its obligation in full as of the date of trial, the court would have

instructed the jury to consider gross lost wages from the date of the insurance company's final payment to the date of trial in addition to lost future earnings.

Nevertheless, the issue is clearly presented as to whether or not a defendant, in these circumstances, is liable to the plaintiff for the difference between the plaintiff's gross lost earnings and the amount paid to plaintiff by his carrier which said payments reflected the mentioned deduction.

We are aware of no authority precisely on this point. We are, of course, aware of the Supreme Court's decision in the case of Singer v. Sheppard, 464 Pa. 387, 346 A. 2d 897 (1975), where the primary issue was the constitutionality of section 301 of the act wherein, in addition to upholding the constitutionality of the act, the Supreme Court divided automobile accident claimants into two classes—those with serious damages and those with less serious damages, the latter to be dealt with under the act by recourse to their no-fault carriers, the former, having preserved to them their common law right to recover damages for non-economic detriment.

A major purpose of the act, of course was to secure speedy, reasonably just recovery to those less seriously injured without the necessity of resorting to costly and frequently cumbersome common law tort proceedings.

Plaintiff argues that to interpret the act as was done in this case is violative of Article 3, §18 of the Pennsylvania Constitution providing, in part, ". . . but in no other cases shall the General Assembly limit the amount to be recovered for injuries resulting in death, or for injuries to persons or property . . ." He further argues that it has always been

the law that a tortfeasor should not be permitted to take advantage of his victim's tax bracket and further that equal protection of the law would be denied to an automobile accident plaintiff whereas other tort victims are permitted to recover gross wage losses. We find these arguments impressive.

However, we do not subscribe to plaintiff's argument that myriad problems would be created by this court's decision with respect to future cases wherein a plaintiff's tax bracket would be a matter for the jury to consider. We reject this latter argument because the only area wherein the gross versus net problem arises is within the $15,000 total obligation of a plaintiff's no-fault carrier and would not arise when claims for amounts in excess of $15,000 either on the basis of actual lost wages or loss of future income which would clearly be gross wages would be in issue.

Having concluded that the common law right to be reimbursed for gross income loss in cases wherein lost wages and/or lost earning capacity exceeds $15,000 remains unchanged by the No-fault Act, we turn to the question of whether defendant is liable to plaintiff for gross wages within the $15,000 limitation and, if we so conclude defendant is indeed liable, we will be obliged to permit recovery by plaintiff of the difference between what his gross wages would have been in this case and what his insurance carrier paid.

Had the court been willing to permit plaintiff to attempt to recover all gross lost wages, the simplest method would have been to permit the plaintiff to introduce evidence of gross lost wages to the time of trial and also to address the lost income aspect of the case and have the jury report the total of these two items in a special finding. Any amount found by

the jury to exceed $15,000 would then have become part of the overall verdict awarded against the tortfeasor.

Even though defendant has advanced an impressive argument that the legislature had the power and in fact intended to change the law so as to obligate tortfeasors to pay only net wages and even though plaintiff has argued that it would be unconstitutional to permit the result requested by defendant, we believe we can base a decision in this case on a fair interpretation of several provisions of the act. We will hold that under any circumstances wherein a plaintiff is required to accept a net wage loss from his primary carrier, a tortfeasor remains liable to pay to plaintiff the difference between what his gross income would have been and what his insurance carrier paid, up to a limitation of $15,000 and whether or not any of the other thresholds in section 301 have been met by plaintiff.

Section 301(a)(4) of the act provides that "[a] person remains liable for loss which is not compensated because of any limitation in accordance with section 202(a), (b), (c) or (d) of this act . . ."

Subsection (b) of section 202 would appear to be the only subsection relevant to our consideration and that provides for work loss as defined in section 103 up to a maximum of $15,000.

Section 103 defines work loss as "loss of gross income of a victim . . ."

While a fair reading of those sections indicate that gross wages lost should be paid, it is clear that under the provisions of section 206, the claimant's primary carrier may reduce the amount of its payments by up to 20 percent of claimant's wages. In this case the reduction was 15 percent.

Since claimant's carrier had the statutory right to reduce payments from gross to net, it would appear logical to the court that this creates an area wherein the claimant is not compensated as a result of a limiting factor authorized under the act which must be incorporated into a fair reading of the overall limitations provided in section 202.

As previously stated, the apparent intention of the legislature in enacting the No-fault Act was to, among other things, limit the right to sue for noneconomic detriment by providing an adequate approach to compensation in lieu thereof. Nevertheless, it would appear that in any case wherein a claimant receives from his carrier an amount less than his gross lost wages the right to sue in tort is retained by the claimant and he is free to do so to recover the difference if he is able to establish fault.

Plaintiff has assigned other reasons in support of his post-trial motions which we have considered and rejected.

With respect to the case before us, we believe we are in a position to properly mold the verdict of the jury. We will do so and will deny plaintiff's post-trial motions.

## ORDER

And now, October 10, 1979, for the reasons set forth in the within opinion wherein the court acknowledged error in failing to permit plaintiff to attempt to prove gross lost wages, and it further appearing to the court that the parties have stipulated as to the amount of gross lost wages to the time of trial, and it further appearing to the court that the jury considered the disability to extend

beyond the time of trial, the verdict of the jury is accordingly molded to reflect gross lost wages to the time of trial which are in the amount of $3,088 above no-fault limitation and accordingly directs that the verdict be modified to read as follows in favor of plaintiff:

1. Future lost earnings ......... $ 2,745.45
2. Lost wages ................... $ 3,088.00
2. All other damages ........... $ 7,500.00
$13,333.45

Plaintiff's post-trial motions are denied.