**Robert S. JONES, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 19541.**

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 3, 1965.

Decided April 28, 1966.

Petition for Rehearing En Banc
Denied June 6, 1966.

538

Mr. Howard Monderer, Washington, D. C. (appointed by this court), for appellant.

Mr. Charles L. Owen, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee. Mr. John C. Conliff, Jr., U. S. Atty. at
the time the brief was filed, also entered an appearance for appellee.

Before BURGER, McGOWAN and TAMM, Circuit Judges.

TAMM, Circuit Judge:

Appellant was found guilty by jury trial of a charge of robbery of a Texaco service station in the District of Columbia. He appeals this conviction, charging that the evidence of his identity as one of the robbers was, as a matter of law, insufficient to support a verdict of guilty. In addition, appellant contends that the trial judge improperly commented on the evidence in the course of his charge to the jury and also refused and failed to properly or adequately charge the jury on the issue of the identification of the defendant.

Briefly summarized, the evidence offered by the Government was to establish the factual situation as outlined hereafter. Washington Corbin, Jr., the night manager of a Texaco gasoline station located in southeast Washington, was on duty at approximately 4:45 a. m. on June 21, 1964, when two men with handkerchiefs covering the lower part of their faces appeared in the service center adjacent to the station's office. While one of the men pointed a shotgun at Corbin, the other removed $350.00 from Corbin's pockets. Thereafter, the robbers marched Corbin "four or five blocks away from the station," apparently in order to delay a telephone call to police. During the march, Corbin was sandwiched between the two robbers, the man wielding the shotgun walking behind him, while the robber who had rifled his pockets walked ahead. During the course of this walking, lasting some six minutes, the handkerchief covering the face of the foremost marcher fell from his face as he turned to speak to Corbin about following him too closely. Corbin testified that he was able to observe this robber's face at that time and positively identified appellant Jones as this robber. The second robber has not been identified.

On August 1, 1964, a detective of the Metropolitan Police Department display-

ed some 7 to 10 photographs of Negro men of various ages to Corbin. From these photographs Corbin identified appellant's picture as that of the robber whose face he had seen. Four weeks later, on August 28, 1964, the same detective took Corbin into a room in a courthouse, asked Corbin if he saw the man who robbed him, and Corbin identified appellant.

## I

Appellant claims the evidence offered by the Government is insufficient as a matter of law to establish his identity as one of the perpetrators of this crime. Extensive examination and cross-examination of Corbin was devoted to the means, manner and accuracy of his identification of the appellant. Corbin's identification of appellant was positive. Throughout the trial he referred to appellant as the man whose "mask dropped," the "dark one" of the two, the one who "wore a close hairline," with a "line around the front." Corbin described appellant's walk in the courtroom as somewhat different from his walk on the night of the robbery and testified he did not know appellant before the robbery but was "able to identify" him. Appellant, in demonstrating his mode of walking, was, of course, aware of the purpose of the courtroom demonstration.

Before this court, appellant claims his identification by a single witness under the circumstances of this case should be ruled as inadequate to sustain his conviction. The full facts as to the lighting conditions, duration of the incident, and nature of the facial characteristics upon which the identification was predicated were fully explored before the jury. Appellant seeks to minimize and discredit the complainant's reference to appellant's hairline as an element in his identification. The record indicates that Corbin was not an especially articulate witness and that he undertook to describe the individual elements that combined to totalize his identification of the appellant in response to vigorous cross-examination, which failed to shake his positive identi-

fication of appellant as one of the robbers. The defendant, the appellant here, did not take the witness stand.

We are of the opinion that the evidence relating to the identification of the appellant was adequate to permit, and even to require, the submission of the case against the appellant to the jury. We must bear in mind that many laymen are not articulate enough to spell out in detail *how* they identify a person; but the degree or extent of detail goes to the weight of the testimony and that, of course, is for the fact triers. The uncorroborated testimony of a complainant is sufficient to support a verdict of guilty in a robbery case. Thompson v. United States, 88 U.S.App.D.C. 235, 236, 188 F.2d 652, 653 (1951). We are of the further opinion that the evidence is sufficient to sustain the jury's finding by its verdict that the identity of the appellant was established beyond a reasonable doubt, as required by the court's charge. See Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Curley v. United States, 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947).

## II

Appellant next alleges that the trial judge improperly stated as facts in his charge to the jury the entire case for the prosecution, particularly on the identification issue and thereby effectively denied appellant a fair trial by jury. The thrust of this charge is addressed to the following summation made by the trial judge in his charge to the jury:

"Now, the evidence here was brief. Washington Corbin, who was in charge of the filling station at 2502 Nichols Avenue, Southeast, in the District of Columbia, testified that at about 4:45 a. m. on June 21st, 1964 he, being alone in the station, saw two men walking in, one of them carrying a shotgun and point it at him, and the other snatched some money from him, according to the testimony, that is, from Corbin, and

**540**

went through Corbin's pockets. Corbin also testified that thereafter they walked him for about four or five blocks and then they released him and told him to keep walking and not to look back and disappeared. He testified that about $350 was taken, of which $150 was Corbin's personal property and the balance belonged to the owner of the service station. He testified that he was with the two robbers altogether about 15 minutes. *He identified the defendant as being one of the two robbers, not the one with the shotgun, but the one who seized the money from him and went through his pockets.*" (Emphasis supplied.)

■ Appellant describes this excerpt as a statement "in a positive form of the evidence of the prosecution which was most adverse to him, without any indication whatsoever that there was any possibility of doubt as to the validity or cogency of the witness." He completely overlooks and ignores the fact that the trial judge's summary was a completely accurate one, amply supported by the evidence. That trial judges of United States courts have authority to comment on the evidence in their jury instructions is so well established as to require no citation of authority. In the present case, however, the trial judge did not comment on the evidence; he merely summarized it, briefly, accurately and objectively. Earlier in his charge, the learned trial judge had instructed the jury that they were the sole judges of the facts, that they must decide the facts themselves—solely upon the basis of the evidence introduced at the trial. Continuing his charge, he told the jury:

"In addition to instructing the jury as to the law the Court has a further function to perform, namely, to summarize, discuss and comment on the facts and on the evidence to the extent to which it seems advisable to do so. This is done, however, solely for the purpose of aiding and assisting the jury in arriving at its conclusions on the facts. The Court's summary and discussion and comments on the facts and on the evidence are not binding on you, they are intended only to help you, and you need attach to them only such weight as you deem wise and proper because, as I said before, you are the sole judges of the facts. My instructions are binding on you only as concerns the law."

■ Appellant seeks to bring this case within Hardy v. United States, 118 U.S. App.D.C. 253, 335 F.2d 288 (1964). The vice of *Hardy* was that the trial judge's summary of the evidence was couched in terms which made the facts appear to be as the judge stated them, rather than as the jury might find them to be from the evidence. This defect was accentuated in *Hardy* by the judge's bracketing of his summary of the evidence with characterizations of his own ("it is a simple case," and "that is all there is to the case") which, in the context, might well have caused the jurors to think that the verdict they should reach was plain. Here, the central error in *Hardy* is missing, since it is clear from the phraseology quoted above that on this occasion the judge stated what the evidence was rather than what the facts were. It is urged upon us, however, that the judge also indulged in general characterizations of the simplicity of the case which might have been prejudicial. Although we do not condone this practice—which seems to us, at best, fraught with unnecessary perils to efficient and economical judicial administration—we think it speculative in the extreme that appellant suffered any actual prejudice. In *Hardy* these characterizations were an integral part of a summary which was itself misleading. Here, the summary was unexceptionable; and the characterizations were remote from it in the charge, being contained in some introductory remarks recognizing that the jury was new and inexperienced.

### III

The final ground of appeal in this case is the charge that the trial judge failed and refused to adequately or properly

charge the jury upon the element of identification of the appellant as one of the perpetrators of the offense charged. The following colloquy occurred at the bench at the completion of the evidence and prior to closing argument:

Defense Counsel, "MR. NUSSBAUM: Yes, Your Honor. I would like an instruction with respect to the standards by which the Government must establish a satisfactory identification of the defendant as the person who committed the robbery.

"THE COURT: Just what are you requesting? What instruction are you requesting?

"MR. NUSSBAUM: That the mere showing of a photograph does not establish the identity of the person in the photograph.

"THE COURT: That is a question of fact for the jury. I am going to deny that."

Thereafter, defense counsel entered objection to the court's earlier ruling on specific questions addressed to witnesses on the subject of "the method of identification." At the termination of the court's charge, in answer to the trial judge's specific question as to whether "there are any objections or suggestions," defense counsel answered in the negative.

Appellant's court-appointed counsel in this court did not represent the appellant in the jury trial of this case. He here argues that the trial court failed entirely to instruct the jury on the issue of identification—"the principal part of appellant's defense." An examination of the transcript of the court's charge establishes that the trial judge did not in fact specifically refer to identification of the defendant, in those words, at any place in his jury charge. We are of the view, however, that the necessity of the Government's establishing the defendant's identity beyond a reasonable doubt as a participant in the commission of the crime was adequately included in the court's charge, as reflected in the following excerpts from the trial court's charge:

"Third—the burden of proof is on the Government to prove the defendant's guilt beyond a reasonable doubt. Unless the Government sustains this burden and proves beyond a reasonable doubt *that the defendant has committed every element of the offense with which he is charged the jury must find him not guilty.*

\*　\*　\*　\*　\*　\*

"I can explain the meaning of the words proof beyond a reasonable doubt in simple every day language. Proof beyond a reasonable doubt simply means this: If after an impartial comparison and consideration of all the evidence you can say to yourself that you are *not satisfied of the defendant's guilt,* then you have a reasonable doubt. But on the other hand, if after such impartial comparison and consideration of all the evidence you truthfully and candidly say to yourself that you have an *abiding conviction of the defendant's guilt,* then you have no reasonable doubt.

"In other words, proof beyond a reasonable doubt is such proof as will result in an *abiding conviction of the defendant's guilt* on your part.

\*　\*　\*　\*　\*　\*

"First, in order to establish robbery it must appear *that the defendant* took something of value or assisted in taking something of value from the victim of the crime; \* \* \*." (Emphasis supplied.)

Appellant, however, embraces our recent opinion in the case of Salley v. United States, 122 U.S.App.D.C. 359, 353 F.2d 897, and contends that this case establishes a requirement that upon request by defense counsel a trial judge must charge the jury specifically upon the issue of identity in all criminal cases and that failure to so in this case requires reversal. We do not so read or understand the *Salley* case. The problem presented to us in the *Salley*

case grew out of the troublesome and recurring question of identification in a Narcotics Act prosecution initiated many months after a purchase made by an undercover narcotics agent as one in a long series of non-related transactions. We emphasized the narrow limitations of our ruling in *Salley* as applying only to this type of prosecution in the following words:

"The widespread police practice of utilizing undercover agents and informers to infiltrate the narcotics underworld is effective and necessary. But it creates added danger that the innocent may be convicted. The undercover agent often files for as many as 100 warrants after his tour of duty, which generally lasts for a number of months. During that time he meets many people, making buys from some and not from others. The possibility of error due to mistake and the fallibility of human memory is obvious. Often the only chance a defendant has to defend himself without accusing the officer of total fabrication is to raise in the jury's mind a reasonable doubt as to whether the defendant was, in fact, the seller. A requested instruction specifically bringing this defense of mistaken identity to the jury's attention *in a narcotics case must be given*. The trial judge was not obligated to give the charge in exactly the words requested by defense counsel. * * * He was obligated to instruct the jury that if there was a reasonable doubt as to the identification of the defendant as the person who made the sale, then the jury should acquit." 353 F.2d at 898. (Footnote omitted) (Emphasis supplied.)

In our present case involving an armed robbery, there is no claim whatsoever that the complaining witness' identification of the defendant was in any way complicated or discredited by any related experience as the victim of a crime of violence. Our concern of a possible error of memory on the part of an undercover narcotics agent attempting to isolate in his recollection the identity of one participant in as many as a 100 similar transactions does not stretch to the same degree of concern for the reliability of the memory of a robbery victim who has had opportunity to see the face and physical characteristics of his assailant. We, accordingly, regard the doctrine of the *Salley* case as addressed specifically to the question therein presented, *id est*, identification in multiple unrelated narcotics purchase cases.

■ We conclude that the record does not show that defendant was prejudiced, and accordingly, we affirm.

■ In our view there is a solution for the recurring problem of claims in this court that the issue of identification was inadequately treated in the instruction to the jury. When the defendant has placed the prosecutor's identification of him in issue, either by his own direct denial, by the production of alibi witnesses, or by impeachment of opposing witnesses, and when the defendant asks for a special instruction on the issue of identification, the district court should frame an instruction adapted to the evidence in the particular case. Such special instruction should point out to the jury that the evidence raises the question of whether the defendant was in fact the criminal actor and necessitates the juror's resolving any conflict in testimony upon this issue. The instruction should, of course, point out that the burden of proof is upon the prosecution with reference to every element of the crime charged and this burden includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime charged.

Affirmed.