STATE OF NORTH CAROLINA v. LEBURN HOYT LANG

No. 7928SC681

(Filed 15 April 1980)

1. **Criminal Law § 101.4— jury's request for evidence during deliberation—denial not abuse of discretion**

    The trial court did not abuse his discretion in refusing the jury's request to have the testimony of defendant's alibi witness given to them during their deliberations, since the court explained the denial of the jury's request by stating that he did not allow records to be read back to the jury "because [the court reporter] may not have heard it exactly as the witness said it, and you people might have heard it differently."

2. **Criminal Law § 97.2— additional evidence not permitted—no abuse of discretion**

    The trial court did not abuse his discretion in denying defendant's motion to reopen the case to put into evidence the time card from the restaurant where defendant's alibi witness worked, since the time card merely presented cumulative evidence as to when the witness left her employment on the night of the crimes.

3. **Criminal Law § 113.9— jury instructions—necessity for calling misstatements to court's attention**

    Slight inadvertences by the judge in his recapitulation of the evidence must be brought to the attention of the judge in time for him to make a correction, and such inaccuracies will not be held reversible error when the matter is not called to the court's attention in apt time to afford opportunity for correction.

4. **Criminal Law § 113.3— identification testimony—instructions on untrustworthiness not required—failure to request instructions**

    There was no merit to defendant's contention that the trial court erred in failing to instruct the jury as to the inherent untrustworthiness of eyewitness identification testimony, since defendant made no request for such an instruction, and since the witness in this case had sufficient opportunity to observe her assailant and his car to support her subsequent identification at trial without special instructions from the court.

5. **Constitutional Law § 31— investigation of crime**

    Police officers are under no duty to take any particular course of action when investigating a crime and are not required to follow all investigative leads and to secure every possible bit of evidence, and their failure to do so is not prejudicial error.

6. **Criminal Law § 102.9— jury argument—defendant compared with other criminals—no impropriety**

    Statement by the district attorney during his closing argument that "before Jimmy Wayne Gacy, Jimmy Jones, and Judas Iscariot committed their

crimes, they had good character" was not prejudicial to defendant since defendant did not object to the remarks and therefore waived his right to complain; the statement did not amount to such a gross impropriety that it could not be corrected; and the court did not abuse his discretion in permitting the argument.

7. **Constitutional Law § 30— oral statement not disclosed to defendant—no proper request for discovery—statement not prejudicial**

There was no merit to defendant's contention that an oral statement allegedly made by him to a police officer was wrongfully withheld from defense counsel during discovery and therefore should have been excluded from evidence, since defendant made neither a written request nor a motion to compel discovery as required by G.S. 15A-902(a); the State did not waive its right to receive a written request by voluntarily producing defendant's written statement pursuant to an informal oral agreement between the prosecutor and defense counsel; and the oral statement itself was consistent with defendant's alibi defense and therefore was not prejudicial to defendant.

8. **Criminal Law § 111— jury required to return guilty verdict—instructions proper**

There was no merit to defendant's contention that, since it has been held that affirmative instructions on jury nullification are improper, it is also improper to instruct that, upon finding the evidence supportive of the charges beyond a reasonable doubt, the jury is required to return a verdict of guilty.

9. **Rape § 18.2— intent to rape—showing required**

An intent to commit rape may be inferred from the evidence without a showing of an actual physical attempt to have intercourse.

APPEAL by defendant from *Grist, Judge.* Judgment entered 11 January 1979 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 14 January 1980.

On 6 November 1978, defendant was indicted on charges of kidnapping with the intent to rape and assault with the intent to commit rape. Upon his plea of not guilty, defendant was convicted by the jury on both charges. Upon his conviction for assault with the intent to commit rape, defendant was sentenced to a prison term of 15 years, and he received a suspended sentence of 25 years on the kidnapping charge, with a five-year probation period to commence at the expiration of the 15-year term. From the judgments entered defendant appeals.

Other facts pertinent to this decision are related below.

*Attorney General Edmisten, by Assistant Attorney General Nonnie F. Midgett, for the State.*

*Elmore and Elmore and Tharrington, Smith and Hargrove, of counsel, and Joseph Beeler, for defendant appellant.*

MORRIS, Chief Judge.

The record contains 20 assignments of error, 16 of which have been brought forward and argued in defendant's brief. Those not brought forward and argued are deemed abandoned. Rule 28, North Carolina Rules of Appellate Procedure. Defendant does not argue his assignments of error in consecutive order, and we will follow the order of argument used by defendant in his brief.

[1] By his nineteenth assignment of error, defendant contends that the trial court improperly refused the jury's request to have the testimony of defendant's alibi witness given to them during their deliberations. At trial, defendant presented Rena James who testified that she had been working as a waitress at a restaurant on the night the alleged kidnapping and assault occurred. The witness testified that defendant arrived at the restaurant shortly before 9:00 p.m., had dinner and left at around 10:00 p.m., which was the approximate interval of time in which the offenses allegedly occurred. After being excused to deliberate, the jury returned and asked if the transcript of the waitress's testimony would be available. The court answered as follows:

> No, sir, the transcript is not available to the jury. The lady who takes it down, of course, is just another individual like you 12 people. And what she hears may or may not be what you hear, and 12 of your people are expected, through your ability to hear and to understand and to recall, to establish what the testimony was. No, I hope you understand. She takes it down and the record, after she submits it to the various individuals, if it needs to be submitted is gone over and then they themselves can object to what she had in the record as not being what the witness says, and so on and so forth. For that reason I do not allow records to even be read back to the jury, because she may not have heard it exactly as the witness said it, and you people might have heard it dif-

State v. Lang

ferently; so for that reason you are required to recall the witness' testimony as you've heard it.

Defendant contends that the trial judge erred by refusing to exercise his discretion to rule on the request, or, if he did exercise his discretion, his denying the request constituted an abuse of discretion in light of the importance of alibi testimony to the issue of identification.

Defendant relies on the recent case of *State v. Ford*, 297 N.C. 28, 252 S.E. 2d 717 (1979), wherein our Supreme Court stated the following rule:

It is well settled in this jurisdiction that the decision whether to grant or refuse the jury's request for a restatement of the evidence lies within the discretion of the trial court. *State v. Fulcher*, 294 N.C. 503, 243 S.E. 2d 338 (1978); *State v. Furr*, 292 N.C. 711, 235 S.E. 2d 193 (1977), *cert. denied*, 434 U.S. 924, 98 S.Ct. 402, 54 L.Ed. 2d 281; *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976). When the exercise of a discretionary power of the court is refused on the ground that the matter is not one in which the court is permitted to act, the ruling of the court is reviewable. (Citations omitted.)

297 N.C. at 30-31, 252 S.E. 2d at 718-19. In *Ford*, the Court concluded that since the trial judge's ruling was based on a misapprehension of the law, he, therefore, erroneously failed to exercise his discretion.

Under the facts of the present case, we reach a different result. The court explained the denial of the jury's request by stating that he did not allow records to be read back to the jury "because [the court reporter] may not have heard it exactly as the witness said it, and you people might have heard it differently. . . ." It is clear from the trial judge's explanation that he did not misapprehend the law regarding his discretion, and that he did in fact exercise his discretion in ruling on the request. Nor does the statement of the trial judge compel a conclusion that the ruling was based on a predisposition on his part to ignore requests to have testimony made available to the jury. The court gave a valid reason for its ruling, and we find no abuse of discretion. This assignment of error is overruled.

[2] Defendant, by his tenth assignment of error, argues that the trial court committed reversible error in its denial of defendant's motion to reopen the case to put into evidence Rena James's time card from the restaurant where she worked on the night in question, she having testified that she left her employment at Bonanza at approximately 10:00 p.m. and arrived home at approximately 10:15 p.m. We find no error in the court's ruling. It is well settled that a motion to reopen the case in order to permit additional evidence is a matter within the discretion of the trial court. *State v. McQueen*, 295 N.C. 96, 244 S.E. 2d 414 (1978). There was no abuse of discretion in the court's ruling in the present instance in that the time card merely presented cumulative evidence as to when the waitress left her employment that night.

[3] Defendant's contention in his eleventh, twelfth, thirteenth, fourteenth and fifteenth assignments of error is that in its charge to the jury the trial court misstated certain evidence concerning the issues of identification and defendant's alibi defense. It is settled in North Carolina that slight inadvertences by the judge in his recapitulation of the evidence must be brought to the attention of the judge in time for him to make a correction, and that such inaccuracies will not be held reversible error when the matter is not called to the court's attention in apt time to afford opportunity for correction. *State v. McAllister*, 287 N.C. 178, 214 S.E. 2d 75 (1975). The alleged inaccuracies in the court's recapitulation of the evidence were not brought to the attention of the trial judge, and under ordinary circumstances, an objection after verdict and upon appeal comes too late.

Defendant contends, however, that the alleged misstatements in the recapitulation of the evidence were not slight inaccuracies but were statements of material fact not shown in evidence and, therefore, the generally accepted and applied rule has no application here. *See State v. Frizzelle*, 254 N.C. 457, 119 S.E. 2d 176 (1961); *State v. Butcher*, 13 N.C. App. 97, 185 S.E. 2d 11 (1971). It will serve no useful purpose for us to discuss in detail the entire charge and each portion of the charge which defendant contends is error. Suffice it to say that on the facts of the case before us, we fail to see any prejudice to defendant from the court's recapitulation of the evidence.

State v. Lang

[4] Defendant next argues his eighteenth assignment of error which is that the trial court erred in failing to instruct the jury as to the inherent untrustworthiness of eyewitness identification testimony. Defendant argues that where the issue of one-on-one identification by the prosecuting witness is involved, as here, the trial court is required, even in the absence of a request for a special instruction, to admonish the jury that the burden of proof is upon the prosecution to prove beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime charged, citing several federal decisions. *E.g., United States v. Holley,* 502 F. 2d 273 (4th Cir. 1974); *United States v. Telfaire,* 469 F. 2d 552 (D.C. Cir. 1972); *United States v. Levi,* 405 F. 2d 380 (4th Cir. 1968); *Jones v. United States,* 361 F. 2d 537 (D.C. Cir. 1966).

The trial judge is required, in instructing the jury, to declare and explain the law arising on the evidence. G.S. 15A-1232. G.S. 1-181 allows special instructions on request, and provides:

(a) Requests for special instructions to the jury must be —

(1) In writing

(2) Entitled in the cause, and

(3) Signed by counsel submitting them.

(b) Such requests for special instructions must be submitted to the trial judge before the judge's charge to the jury is begun. However, the judge may, in his discretion, consider such requests regardless of the time they are made.

(c) Written requests for special instructions shall, after their submission to the judge, be filed as a part of the record of the same.

A request for special instructions, properly made, imposes a duty on the court to give the instructions, at least in substance, where relevant to the case. *State v. Thomas,* 28 N.C. App. 495, 221 S.E. 2d 749 (1976). However, in the absence of such a request, no duty arises on the part of the trial court, and where the instruction is not in writing and signed pursuant to G.S. 1-181, it is within the discretion of the trial judge to give or to refuse an instruction. *State v Thomas, supra; State v. Hardee,* 6 N.C. App. 147, 169 S.E. 2d 533 (1969). In the present case, defendant made no request for a special instruction on the issue of identification.

Defendant insists, however, that under the federal decisions previously cited, the court has a duty to give an identification instruction, notwithstanding the failure of defense counsel to request such an instruction. In *United States v. Levi*, 405 F. 2d 380 (4th Cir. 1968), the Fourth Circuit approved an identification instruction in a context identical to the present case where the question of the sufficiency of one-on-one positive identification arose:

> In response to recurrent appeals questioning the sufficiency of one-on-one positive identification testimony to support a conviction, the Court of Appeals for the District of Columbia has promulgated a rule that when the defendant has placed his identification in issue, it is incumbent upon the trial court, *on request*, to specially instruct the jury (1) "that the evidence raises the question of whether the defendant was in fact the criminal actor and necessitates the juror's resolving any conflict in testimony upon this issue," and (2) "that the burden of proof is upon the prosecution with reference to every element of the crime charged and this burden includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime charged." *Jones v. United States*, 124 U.S. App. D.C. 83, 361 F. 2d 537, 542 (1966). We approve. (Emphasis added.)

405 F. 2d at 382-83. In *United States v. Telfaire*, 469 F. 2d 552 (D.C. Cir. 1972), the Court adopted a similar instruction and without espousing a mandatory application, emphasized the care with which the instruction should be used:

> We do not qualify in any particular the importance of and need for a special identification instruction. But in evaluating the prejudice inherent in the failure of the trial court to offer one, we have taken into account that in the circumstances of a particular case, the proof, contentions and general instructions may have so shaped the case as to convince us that in any real sense the minds of the jury were plainly focused on the need for finding the identification of the defendant as the offender proved byond a reasonable doubt.

469 F. 2d at 555-56. The Court concluded that although such an instruction was not compulsory, "a failure to use this model, with appropriate adaptations, would constitute a risk in future cases

that should not be ignored unless there is strong reason in the particular case." 469 F. 2d at 557.

More recently, in *United States v. Holley,* 502 F. 2d 273 (4th Cir. 1974), the Fourth Circuit adopted the approach taken in *Telfaire,* and interpreted that decision as follows:

> After our decision in *Levi,* the Court of Appeals of the District of Columbia viewed our decision as "the correct approach," *United States v. Telfaire,* 152 U.S. App. D.C. 146, 469 F. 2d 552, 555 n. 5 (1972) and took it a step further. In *Telfaire* the District of Columbia Circuit in effect required that our *Levi* instruction to the district judges be given by the trial judge to the jury. We agree that to guard against misidentification and the conviction of the innocent it is not enough that the trial judge himself be specifically alerted to the detailed factors that enter into the totality of the circumstances, but that the jury should also be charged. In *Telfaire* the District of Columbia Circuit adopted generally for judges within the district of a model instruction, . . . but permitting variation and adaption to suit the proof and contentions of a particular case. We now do likewise as to the district judges in this circuit . . . Prospectively, we shall view with grave concern the failure to give the substantial equivalent of such an instruction, but it is not our purpose to require that it be given verbatim.

502 F. 2d at 275.

We need not decide at this time what effect these decisions have on the rule in North Carolina requiring written requests for special instructions. As persuasive authority, these decisions suggest that the issue of one-on-one identification is one that should be continuously scrutinized against constitutional standards. However, assuming *arguendo* that the jury's attention was significantly forcused on the issue of identity, we find that this case "exhibits none of the special difficulties often presented by identification testimony that would require additional information be given to the jury in order for us to repose confidence in their ability to evaluate the reliability of the identification." *United States v. Telfaire, supra,* at 556. Defendant raises no objection to the pre-trial identification procedures utilized in this case. Further, it appears that, although the prosecuting witness was told

to put her head down during most of the time she was in her assailant's car, there was sufficient opportunity to see and observe her assailant and the car he was operating to support her subsequent identification at trial. We conclude, therefore, that the lack of a special identification instruction does not constitute prejudicial and reversible error. This assignment of error is overruled.

[5]  Defendant next complains, in assignment of error No. 20, that the State failed to conduct certain investigatory tests which defendant contends, if made, would have exonerated him from any involvement in the crimes alleged. We find defendant's argument totally without merit. "Police officers are under no duty to take any particular course of action when investigating a crime. Of course, they cannot suppress evidence. *Brady v. Maryland*, 373 U.S. 83, 10 L.Ed. 2d 215, 83 S.Ct. 1194 (1963). They are not required, however, to follow all investigative leads and to secure every possible bit of evidence, and their failure to do so is not prejudicial error." *State v. Noell*, 284 N.C. 670, 694, 202 S.E. 2d 750, 765 (1974), *death sentence vacated*, 428 U.S. 902, 49 L.Ed. 2d 1205, 96 S.Ct. 3203 (1976). *See also State v. Henderson*, 285 N.C. 1, 203 S.E. 2d 10 (1974), *death sentence vacated*, 428 U.S. 902, 49 L.Ed. 2d 1205, 96 S.Ct. 3202 (1976). We overrule this assignment of error.

[6]  By his ninth assignment of error, defendant contends that the court erred by failing to strike *ex mero motu* a portion of the district attorney's closing argument, asserting that the prosecutor improperly associated him with known criminals. In rebuttal to testimony given by certain character witnesses presented by defendant, the district attorney stated on final argument that "a person could commit a crime even though he had a reputation of good character." He then stated that "before Jimmy Wayne Gacy, Jimmy Jones, and Judas Iscariot committed their crimes, they had good character" and that "Jimmy Jones had Rosalyn Carter speak of his good character." Defendant argues that these statements exceeded the bounds of proper argument. We disagree.

First, it is sufficient to note that defendant did not object to the State's remarks, and, therefore, waived his right to complain. "[A]n impropriety in counsel's jury argument should be brought

to the attention of the trial court before the case is submitted to the jury in order that the impropriety might be corrected." *State v. Hunter*, 297 N.C. 272, 277, 254 S.E. 2d 521, 524 (1979); *State v. Smith*, 291 N.C. 505, 231 S.E. 2d 663 (1977). Second, although this rule does not apply when the impropriety is so gross that it cannot be corrected, *State v. Hunter, supra*, the alleged transgression here was certainly not in that category. Finally, "[t]he control of the argument of the district attorney and counsel must be left largely to the discretion of the trial judge and his rulings thereon will not be disturbed in the absence of gross abuse of discretion." *State v. Hunter, supra*, 297 N.C. at 278, 254 S.E. 2d at 524. We find none here. This assignment of error is overruled.

[7] Defendant next maintains (assignment of error No. 6) that the court improperly admitted into evidence testimony concerning an oral statement allegedly made by defendant while being interviewed by a police officer a few hours after the incident took place. The purport of the statement was that defendant had eaten dinner at a steak house between 9:00 p.m. and 9:30 p.m. that evening. On cross-examination, defendant did not deny making the statement, but said he "was there until later" than 9:30 p.m. and that he did not "recall saying a limited time". The police officer who had interviewed defendant stated on rebuttal that defendant had told him "that he had dinner between 9:00 and 9:30 at some steak house. . . ." Defendant argues that the existence of this oral statement was wrongfully withheld from defense counsel during discovery, and, as admitted, the statement constitutes prejudice toward defendant.

G.S. 15A-903(a)(2) provides:

(a) Statement of Defendant—Upon motion of a defendant, the court must order the prosecutor:

. . .

(2) To divulge, in written or recorded form, the substance of any oral statement made by the defendant which the State intends to offer in evidence at the trial.

This section makes clear the duty of the State with respect to discovery of oral statements by a defendant. It also makes clear that the burden is on defendant to request such discovery in writing prior to a motion to compel discovery. Defendant has

made neither a written request nor a motion to compel discovery as required by G.S. 15A-902(a). The State, therefore, has no duty to produce a defendant's statement or to notify defendant of its intention to use a defendant's oral statement at trial. In addition, we reject defendant's contention that the State waived its right to receive a written request by voluntarily producing defendant's written statement pursuant to an informal oral agreement between the prosecutor and defense counsel. Furthermore, we find little prejudice in the testimony admitted at trial. The substance of the statement was that defendant was at a restaurant between 9:00 p.m. and 9:30 p.m., which is totally consistent with defendant's alibi defense. The statement does not contradict defendant's assertion that he did not leave the restaurant until 10:00 p.m. We, therefore, reject defendant's argument and overrule this assignment of error.

[8]  By his assignments of error Nos. 1 and 17, defendant contends that the trial court improperly instructed the jury that if they were to find that the elements of the charges alleged were proven beyond a reasonable doubt, "it would be your duty to return a verdict of guilty . . . ." Defendant's position is based on federal decisions recognizing that juries possess the power of "nullification"; *i.e.*, the power to acquit a defendant even where such a verdict is contrary to the law and evidence. *E.g., United States v. Dougherty,* 473 F. 2d 1113 (D.C. Cir. 1972); *United States v. Simpson,* 460 F. 2d 515 (9th Cir. 1972); *United States v. Moylan,* 417 F. 2d 1002 (4th Cir. 1969). Defendant reasons that since it has been held that affirmative instructions on jury nullification are improper, *United States v. Moylan, supra, United States v. Dougherty, supra,* this Court should hold that it is also improper to instruct that upon finding the evidence supportive of the charges beyond a reasonable doubt, they are *required* to return a verdict of guilty.

Although defendant's argument presents an interesting question as to the operation of the jury system, we are compelled to reject defendant's position. Defendant cites no authority nor can we locate any which supports defendant's contention that the instruction given in the present case is improper. It is our opinion that inasmuch as the majority of courts have refused to permit instructions explicitly referring to the right of nullification, it would be inconsistent to hold that this instruction is inappropriate.

Although it is well settled that "[i]n a criminal case a court may not order the jury to return a verdict of guilty, no matter how overwhelming the evidence of guilt," *United States v. Spock,* 416 F. 2d 165, 180 (1st Cir. 1969) and cases cited therein, we do not believe the instruction in the present case invades the province of the jury in similar vein. Indeed, we find the instruction as given to be entirely consistent with the principle of law that "it is the duty of juries in criminal cases to take the law from the court and apply that law to the facts as they find them to be from the evidence." *Sparf and Hansen v. United States,* 156 U.S. 51, 102, 39 L.Ed. 343, 361, 15 S.Ct. 273, 293 (1895).

In addition, defendant complains that the trial court misled the jury as to the duties of the parties in a criminal trial by stating in its preliminary remarks the following: "It's the State's duty and Defense Counsel's duty right here to present to you whatever you need to know to decide this case. . . ." Given the context in which they were spoken, we do not find the court's remarks offensive or improper.

[9]  Finally, by assignment of error No. 4, defendant contends that the evidence presented by the State was insufficient to go to the jury on the charge of kidnapping with the intent to rape. The quantum of evidence necessary on the element of intent is aptly explained by former Chief Justice Sharp in *State v. Hudson,* 280 N.C. 74, 77, 185 S.E. 2d 189, 191 (1971), *cert. denied,* 414 U.S. 1160, 39 L.Ed. 2d 112, 94 S.Ct. 920 (1974), and that discussion is applicable here. It is clear that an intent to commit rape may be inferred from the evidence without a showing of an actual physical attempt to have intercourse. *State v. Hudson, supra; State v. Sports,* 41 N.C. App. 687, 255 S.E. 2d 631, *further review denied,* 298 N.C. 205, --- S.E. 2d --- (1979). After reviewing the evidence presented, we are of the opinion that from defendant's actions as well as circumstances surrounding the incident, the jury could properly infer that the abduction was committed with an intent to commit rape. Defendant's assignment of error is overruled.

For the foregoing reasons, we find in the trial below

No error.

Judges MARTIN (Harry C.) and HILL concur.