## Reachard v. Reachard

*John D. Miller,* for plaintiff.
*Edward R. LeCates,* for defendant.

CASSIMATIS, *J.,* December 22, 1981 — This is before the court for disposition of defendant's preliminary objections to plaintiff's complaint.

Plaintiff has filed for support on behalf of her niece, Vickie Mummert, born on August 21, 1964, in York, Pa.

Defendant in his preliminary objections denies paternity. In addition, defendant avers that plaintiff's action is barred by the Crimes Code, 18 Pa.C.S.A. §4323(b) (since repealed) and by section 6704(e) of the Judicial Code, 42 Pa.C.S.A. §6704(e), as amended by Act 1978-46. The former is the two-year criminal statute of limitations for "neglect to support bastard." The latter is the six-year civil statute of limitations for a civil support action.

Plaintiff has filed an answer to the preliminary objections denying that the complaint is barred by 18 Pa.C.S.A. §4323(b) (since repealed), and in addition, contending that 42 Pa.C.P.S.A. §6704(e) is unconstitutional as violative of the Equal Protection Clause of the United States Constitution and Pa. Const., Art. 1, §26.

We note that there is some confusion as to the proper procedure for raising the affirmative defense of the statute of limitations in a paternity action. The new support rules, effective July 22, 1981, indicate that no pleading is necessary to raise the statute of limitations in section 6704(e). See Pa.R.C.P. 1910.7. The explanatory note to Rule 1910.7 suggests that an answer may be filed to deny the averments in the complaint. However, there is no indication whether the assumpsit pleading rules are to be applied when the statute of limitations is

raised by preliminary objections contra Pa.R.C.P. 1030. Nonetheless, we will address the merits of defendant's preliminary objections because the explanatory note to rule 1910.7 states that "such preliminary issues should be disposed of by the court as expeditiously as possible."

Defendant's first argument that plaintiff's action for support is barred by the two-year criminal statute of limitations in 18 Pa.C.S.A. §4323(b) (since repealed) was previously addressed by the York County Court of Common Pleas in Heindel v. Ellis, 94 York 141 (1981). In Heindel, Judge Buckingham ruled on the issue of the retroactivity of the new six-year civil statute of limitations and its effect on support actions where the former two-year criminal statute of limitations had already lapsed. In holding that the lapse of the two-year criminal statute of limitations would not bar a civil action for support under section 6704(c), Judge Buckingham followed the decision of Judge Kaplan of the Allegheny County Court of Common Pleas in Broadie v. Hall, 128 Pitts.L.J. 309 (1980). Judge Kaplan, after a very thorough and careful analysis of the retroactivity of 42 Pa.C.S.A §6704(e), stated that the "civil paternity statute provides a new independent means of securing enforcement of an existing right." Broadie at 311. In addition, Judge Buckingham stated in Heindel that "(s)ince that Act neither increases the liability of the defendant nor denies any substantive right to him, but merely changes the procedural remedy, the defendant does not suffer. The act merely changes the procedural remedy to enforce a continuing, ongoing right and obligation theretofore (sic) unenforceable and brought into existence a civil procedure theretofore unavailable." Heindel at 144.

Therefore, we hold that plaintiff's action is not

barred by section 4323(b) of the Crimes Code of December 6, 1972.

Defendant's second argument is that plaintiff's complaint was not timely filed within the six-year statute of limitations period[1] set forth in 42 Pa.C.S.A. §6704(e). The section reads,

"All actions to establish the paternity of a child born out of wedlock brought under this section must be commenced within six years of the birth of the child, except where the reputed father shall have voluntarily contributed to the support of the child or shall have acknowledged in writing his paternity, in which case an action may be commenced at any time within two years of any such contribution or acknowledgement by the reputed father."

Vickie Mummert, the child for whom plaintiff seeks support, was born August 21, 1964. Defendant contends that the present action filed on or about April 10, 1981, should be dismissed as untimely. However, plaintiff asserts that the six-year statute of limitations applicable only to non-marital children is unconstitutional as a denial of equal protection of the law.

The issue before this court is whether 42 Pa.C.S.A. §6704(e) of the Judicial Code violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and Pa. Const., Art. 1, §26, by requiring that all actions

---

1. The case before us only invloves the six-year period in which to bring the paternity action under the civil support laws. There is, also, a two-year period which is operative when the reputed father has contributed to the support of the child or has acknowledged his paternity in writing. The facts do not require us to address the two-year provision.

to establish paternity of a child born out of wedlock be commenced within six years of the birth of the child in order to sue for support and by not imposing such a restriction upon a child born in wedlock.

Plaintiff contends that the time limitation to establish paternity as a prerequisite to seeking support as set forth in section 6704(e) unconstitutionally treats non-marital children differently than marital children, notwithstanding the fact that all children have equal rights to seek support from their natural fathers. See Gomez v. Perez, 409 U.S. 535 (1973). In order to resolve plaintiff's equal protection challenge to section 6704(e), a brief review is necessary of the United States Supreme Court cases dealing with non-marital children equal protection of the law issues.

At the outset, we note "that a legislative enactment enjoys a presumption in favor of its constitutionality and will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution. All doubts are to be resolved in favor of a finding of constitutionality." Parker v. Children's Hospital of Philadelphia, 483 Pa. 106, 116,394 A. 2d 932 (1978). See also Singer v. Sheppard, 464 Pa. 387, 346 A. 2d 897 (1975) and Milk Control Commission v. Battista, 413 Pa. 652, 198 A. 2d 840 (1964). Further, the United States Supreme Court in Parham v. Hughes, 441 U.S. 347, 351 (1979), stated that "state laws are generally entitled to a presumption of validity against attack under the Equal Protection Clause." With this presumption in mind, we will proceed first to review the most recent United States Supreme Court cases dealing with the scope of judicial review when dealing with the rights of non-marital children.

The scope of judicial review of classifications based on illegitimacy has gravitated between a less

than "strict scrutiny" standard and more than ordinary scrutiny or a rationality standard. In Weber v. Aetna Casualty and Surety Co., 406 U.S. 164, 172, (1972), the United States Supreme Court, reviewing Louisiana's workmen's compensation laws, stated, "The tests to determine the validity of state statutes under the Equal Protection Clause have been variously expressed, but this court requires, at a minimum, that a statutory classification bear some rational relationship to a legitimate state purpose."

The court further explained that "when state statutory classifications approach sensitive and fundamental personal rights, this court exercises a stricter scrutiny." Weber at 172. The test for determining the constitutional validity of statutory classifications was then refined by the Weber Court as consisting of a two-part examination. "The essential inquiry . . . is . . . a dual one: What legitimate state interest does the classification promote? What fundamental personal rights might the classification endanger?" (at 173)

In Trimble v. Gordon, 430 U.S. 762, 767, (1977), the court discussed its prior declarations on the scope of judicial review of statutory classifications and stated:

". . . illegitimacy is analagous in many respects to the personal characteristics that have been held to be suspect when used as the basis of statutory differentiation. Id., at 505 [Mathrew v. Lucas, 427 U.S. 495, 49 L.Ed. 2d 651]. We nevertheless concluded that the analogy was not sufficient to require 'our most exacting scrutiny.' Id., at 506. Despite the conclusion that classifications based on illegitimacy fall in a 'realm of less than strictest scrutiny.' Lucas also establishes that the scrutiny' is not a toothless one.' Id., at 510."

The Trimble Case involved an Illinois interstate succession only allowing non-marital children to inherit from their natural mothers and not their natural fathers.

Finally, in Lalli v. Lalli, 439 U.S. 259, 265, (1978), the court stated that, ". . . classifications based on illegitimacy are not subject to 'strict scrutiny,' they nevertheless are invalid under the Fourteenth Amendment if they are not substantially related to permissible state interests."

In addition, the relationship between the statute and the state interest cannot be "so tenuous that it lacks the rationality." Lalli at 273. Thus, the test of constitutionality is more than mere rationality and less than strict scrutiny.

After review of the law as set forth above, our inquiry in the case before us must focus on whether the state's interest in preventing the litigation of stale claims is achieved and whether it is a substantial one to justify the imposition of the six-year statute of limitations, thereby restricting the non-marital child's right to seek support from its natural father. This state interest was recognized as legitimate by the United States Supreme Court in Jimenez v. Weinberger, 417 U.S. 628 (1974).

The other jurisdictions which have addressed the constitutionality of similar paternity-support statutes have reached inconsistent results. Several have upheld their statute of limitations based on the state's interest in preventing the litigation of stale claims. These jurisdictions have balanced the potential harm to the state's interest in preventing the litigation of stale claims. These jurisdictions have balanced the potential harm to the non-marital child when he/she is denied support against the problems of proof placed on the reputed father. These jurisdictions have favored the reputed fa-

ther. Furthermore, they have held that it is a reasonable limitation upon the ability of the child to establish paternity. See M.E.S. v. S.E.B., 7 Fam. Law Rep. 2049 (1980), (District of Columbia's two-year statute of limitations); Thompson v. Thompson, 404 A. 2d 269 (1979), (Maryland's two-year statute of limitations); State ex rel Krupke v. Witkowski, 256 N.W. 2d 216 (1977), (Iowa's two-year statute of limitations); Cessna v. Montgomery, 344 N.E. 2d 447 (1976), (Illinois' two-year statute of limitations).

Conversely, several jurisdictions have invalidated their statutes on Equal Protection grounds. They have held that the arbitrary time period is not directly related to the state's interest and, in fact, operates as an impenetrable barrier to the nonmarital child's right to seek support. See Montana v. Wilson, 7 Fam. Law Rep. 2665 (1981), (Montana's three-year statute of limitations); County of Lenoir ex rel Cogdell v. Johnson, 264 S.E. 2d 816 (N.C. App. 1980), (North Carolina's three-year statute of limitations); State of Florida v. West, 378 So. 2d 1220 (1979), (Florida's four-year statute of limitations).

Two other jurisdictions have held their statutes of limitations only apply to the mother's claim and not to the child's right to seek support: Stringer v. Dudoich, 583 P. 2d 462 (N.M. Sup. Ct. 1978), New Mexico's two-year statute of limitations); Smith v. Simmons, 602 P. 2d 546 (Kan. Ct. App. 1979) and Huss v. DeMott, 524 P. 2d 743 (1974), (Kansas' one-year statute of limitations).

Finally, the Texas one-year statute of limitations has been challenged in three different cases with conflicting results. The statute was upheld in Texas Dept. of Human Resources v. Chapman, 570 S.W. 2d 46 (Tex. Cw. App. 1978) and invalidated in

In the Interest of Miller, 604 S.W. 2d 332 (Tex. Cw. App. 1980). The third case, Mills v. Habluetzel, 49 USLW 3806 (1981), in which the statute was upheld, was appealed to the United States Supreme Court and granted review to determine if the statute violates the Fourteenth Amendment.

We find that the cases holding the statute of limitations invalid as violative of the Equal Protection Clause more persuasive and overcoming the presumption of its validity and constitutionality. Specifically, we are in accord with the analysis of the North Carolina Court of Appeals in Lenoir, supra. The court, in invalidating its three-year statute stated at 264 S.E. 2d 821:

"We have no reason to believe that the mere passage of time bears a direct relation to the truth of the claim asserted. Moreover, the need of a child to receive adequate support manifestly outweighs the relation the statute of limitations may have to the prevention of fraudulent claims. An especially troublesome aspect of the application of the statute here is that a child is wholly reliant on its mother or the State to bring a claim in its behalf before the statute runs. In further support of our position, it is clear that the limitation stated in G.S. 49-14(c)(1) is inconsistent with the state's interest in preventing, whenever possible, illegitimate children from becoming public charges." (citation omitted.)

The Pennsylvania six-year statute of limitations, 42 Pa.C.S.A. §6704(e), also does not achieve the state's objective of avoiding stale claims because an arbitrary period of time will not and cannot insure the availability if proof of paternity within the child's first six years of life. Furthermore, the six-year time limitation to prove paternity essentially terminates the child's right to support permanently

unless the reputed father decides to support the child thereafter and invoke the two-year statute of limitations. Therefore, the statute stands as an impenetrable barrier to a non-marital child's right to support after six years. Thus, the statute must be invalidated because of United States Supreme Court case of Gomez v. Perez, supra. In Gomez, the court stated at 409 U.S. 538: "We recognize the lurking problems with respect to proof of paternity. Those problems are not to be lightly brushed aside, but neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination."

This statute also conflicts, as in Lenoir, with another important state interest announced by our state Supreme Court in Com. v. Staub, 461 Pa. 486, 337 A. 2d 258 (1975). The court in Staub, at 491, stated that: "It is clear that the primary interest of the State is to secure support for the child born out of wedlock and to prevent it from becoming a public charge." The statute hinders the achievement of this goal by setting a six-year limit on the period in which to prove paternity.

We recognize as did the United States Supreme Court in Gomez that there are problems with proof of paternity after the passage of many years. However, the new advances in blood typing such as the "HLA" typing test (human leucocyte antigen) may alleviate these problems and increase the accuracy in finding lack of paternity. Judge Spaeth of our Pennsylvania Superior Court in his concurring opinion in Mengel v. Mengel, 287 Pa. Superior Ct. 186, 429 A. 2d 1162 (1981), discussed the 'HLA' typing test and its probable admissibility under Pennsylvania's version of the Uniform Act on Blood Testing to Determine Paternity, 42 Pa.C.S.A. §6131 et seq. The advances in blood typing were also men-

tioned by Judge Kaplan in Broadie, supra. He was commenting on the possible unconstitutionality of §6704(e) and referred to the effects that the 'HLA' test might have in minimizing the effect of the passage of time on paternity determinations.

In addition, the North Carolina Court of Appeals discussed the new advances in blood typing in Lenoir. The court stated at 264 S.E. 2d 821:

"The need for a statute of limitations in civil paternity actions must especially be questioned in light of advances which have recently been made in blood typing, such as the HLA typing test, which in combination with other tests had been determined to be between 95.4 and 99.4 percent accurate in determining a defendant's lack of paternity."

In summary, we conclude that 42 Pa.C.S.A. §6704(e) creates an impenetrable barrier to non-marital children who seek support from their natural fathers. The statute is not substantially related to any permissible state interest, and it unconstitutionally discriminates against non-marital children in violation of the Equal Protection Clause of the United States Constitution Pa. Const., Art. 1, §26.[2]

---

2. Counsel for plaintiff informed the court that he provided notice to the Attorney General of Pennsylvania as required by Pa.R.C.P. 235 by letter dated June 10, 1981. The attorney general has neither intervened nor asked to be heard without intervention. A copy of plaintiff's letter of June 10, 1981 is directed to be placed in the prothonotary's file together with a copy of the letter from the attorney general dated June 23, 1981, acknowledging receipt of the notice. The attorney general indicated that plaintiff's counsel would promptly be notified if the attorney general decided this matter warrants the attorney general's involvement. Attorney Miller informs the court that he received no such notice.

Accordingly, we shall enter the following

ORDER

And now, December 22, 1981, defendant's preliminary objections to plaintiff's complaint for support are refused and dismissed.

Defendant is granted leave to file an answer to the complaint within 25 days of the date of this order. His failure to do so shall not operate as an admission of paternity.

The prothonotary's office is directed to provide notice of the entry of this opinion and order as required by law.