STATE OF NORTH CAROLINA v. JERRY ROGERS McMILLIAN

No. 8226SC154

(Filed 16 November 1982)

**1. Criminal Law § 87.1— leading questions—no prejudicial error**

The trial court did not err in allowing leading questions which related to the type of car defendant was driving when he came to the prosecuting witness's apartment and information gained from the car search since these questions in no way affected the result of defendant's trial. Nor was it prejudicial error to ask on *voir dire* a leading question concerning the presence of a passenger in the car to be searched.

**2. Criminal Law § 73.1— admission of hearsay statements—harmless error**

The admission of certain hearsay statements was harmless error where either similar evidence was later admitted without objection or the jury was told to consider the evidence for corroborative purposes only.

3. **Criminal Law § 42.1— articles connected with crime—proper foundation for introduction into evidence**

   A proper foundation was laid for the introduction of a yellow towel and gun where two witnesses testified that the articles were similar to the ones seen in defendant's presence, and where the objects were not introduced into evidence until after being identified by the officer who found them during the search of a vehicle in which the defendant had been seen riding.

4. **Criminal Law § 34.4— admission of other offenses—proper to show disposition to commit crime**

   In a prosecution for assault with a deadly weapon, it was not error for a witness to relate incidents in which the defendant acted abusively toward her since they were relevant to show defendant's aggressive and abusive attitude immediately preceding the assault on the prosecuting witness and the chain of circumstances which led up to the incident for which defendant was charged.

5. **Constitutional Law § 30— defendant's failure to comply with discovery procedures—no duty of State to tender names of potential witnesses**

   Where the record on appeal contained no indication that the defendant complied with the discovery procedures outlined in Article 48 of N.C. Gen. Stat. Chapter 15A, the State was under no duty to tender the names of two officers to defendant as potential witnesses.

6. **Searches and Seizures § 13— warrantless search of vehicle—consent by driver**

   The trial court did not err in denying defendant's motion to suppress evidence of a yellow towel and a shotgun found in the search of a silver-blue station wagon where the evidence tended to show that a description of the car was given by the prosecuting witness to an officer as the vehicle in which defendant had recently been seen riding; that the officer stopped the vehicle and was told by the driver that defendant had been in the vehicle a short period of time before the officer had approached it; and that the operator of the vehicle voluntarily consented to a search of the car. There was probable cause to believe that the search would reveal evidence pertaining to the crime, and defendant had no ground to object to a search of the vehicle since the one who was in possession and control of the vehicle freely and voluntarily consented to the search.

7. **Assault and Battery § 14.1— assault with a deadly weapon—sufficiency of evidence**

   In a prosecution for assault with a deadly weapon, the evidence was sufficient to be presented to the jury.

APPEAL by defendant from *Griffin, Judge.* Judgment entered 28 October 1981 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 15 September 1982.

Defendant was tried for assault with a deadly weapon upon Barbara Miller. The jury returned a verdict of guilty as charged. From imposition of an active prison sentence, defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General William F. Briley, for the State.*

*Donald Tepper for defendant appellant.*

BECTON, Judge.

The State presented evidence that in June 1981 defendant began dating Queen Miller, the sister of Barbara Miller. Queen testified that initially her relationship with defendant was very good, but that later he began abusing her verbally and physically. On the 8th and 9th of July 1981 the defendant acted so strangely and abusively toward her that she became afraid to be in his presence. On 12 July 1981, a Sunday, defendant came to her house with a 16-inch pump sawed-off shotgun which she had seen the day before wrapped in a yellow towel. He forced her to stay that night with him at his mother's house. She stated that she was terrified.

Barbara Miller testified that she and her three-year-old son shared an apartment with her sister, Queen Miller. The defendant was frequently at their residence while dating Queen. On 13 July 1981, a Monday, Barbara saw defendant drive up to her apartment in a blue car. As he was coming up the steps, she observed that he was carrying a gun under a yellow towel. She tried to lock the screen door, but defendant snatched it open. He asked her the whereabouts of her sister. When she replied that her sister was not there, defendant put the gun against her head, cocked it, and told her that if she did not tell him where Queen was he would blow her head off. Defendant stayed at her apartment about two hours, during which time he theatened her and pointed the gun at her son. Defendant stated at one point that he had the gun with him because he was planning to rob a bank.

Later that day Queen and Barbara took out assault warrants on defendant. Queen told the police that defendant had been seen riding in a silver-blue station wagon with wood panels and in a maroon-over-black Monte Carlo. The next day a vehicle with the latter description was stopped by the police, and, minutes later, a silver-blue station wagon with wood panels pulled up. The police obtained permission from the driver to search the station wagon, and a shotgun wrapped in a yellow towel was found in the car. Defendant was arrested by the police later that day.

Defendant testified that on 13 July he went to the apartment, and Barbara Miller's niece let him in. Barbara told him that Queen was not there. Later the defendant and Barbara had an argument. She asked him to leave, and he did. Defendant denied having a gun with him or owning the gun described by Barbara Miller. He also denied ever pointing a gun at Barbara or threatening her.

I

The issues on appeal concern certain evidentiary rulings by the trial court, the admission of testimony by police officers whose names were not listed as potential witnesses, the denial of the defendant's motion to suppress evidence seized from the car, the denial of defendant's motions to dismiss the charge and for a directed verdict, and whether the trial court expressed an opinion in its charge. We have considered all the issues, and, for the reasons that follow, we find no error.

II

[1] Defendant first argues that the trial court erred by allowing the State to solicit testimony by use of leading questions. Defendant acknowledges the decision by a trial judge to allow a leading question is a matter of discretion which will not be disturbed on appeal in the absence of a showing of prejudice. *State v. Smith,* 291 N.C. 505, 519, 231 S.E. 2d 663, 672 (1977). Basically, the questions objected to by defendant, which can properly be classified as leading questions, relate to the type of car defendant was driving when he came to the apartment and information gained from the car search. These questions in no way affected the result of defendant's trial. The single other question objected to by defendant as leading was one posed on *voir dire* in which the witness was asked about the presence of a passenger in the car to be searched. Although the question was arguably improper in form, we find no prejudice. The rules of evidence are not as stringently applied in *voir dire* hearings as at full trials. *State v. Melvin,* 32 N.C. App. 772, 233 S.E. 2d 636 (1977). Further, since the same evidence was later admitted without objection, defendant lost the benefit of his objection. *Id.* at 774, 233 S.E. 2d at 638.

III

[2] Defendant next contends the trial court committed reversible error by allowing hearsay testimony into evidence. We do not

agree. Certain of the objections were to testimony by Barbara Miller that her son said, "Jerry's got a gun" and that her brother asked Jerry why he had a gun. The record is replete with evidence that defendant possessed a gun at this time, and similar evidence was later admitted without objection. Consequently, defendant loses the benefit of his objection on   appeal. *Id.*

Testimony by a police officer concerning statements made to him by Queen Miller and Barbara Miller was not objectionable as hearsay in light of the trial court's instructions that the jury was to consider the evidence for corroborative purposes only. *State v. Montgomery,* 291 N.C. 91, 102, 229 S.E. 2d 572, 580 (1976). We also find no prejudice in hearsay evidence concerning the ownership of the vehicle searched by the police since the testimony occurred during the *voir dire* inquiry and similar evidence was later introduced without objection. *State v. Melvin,* 32 N.C. App. 772, 233 S.E. 2d 636 (1977).

## IV

[3]   Defendant argues that the yellow towel and gun found following the search of the station wagon were introduced without a proper foundation. A review of the record reveals that both objects were identified by Queen and Barbara Miller as being like or similar to the towel and gun seen in defendant's possession. The objects were not introduced into evidence until after being identified by the officer who found them during the search of the vehicle. He testified that they had been in the custody of the Property Control of the Charlotte Police Department until he personally brought them to the courtroom. We find this to be a proper foundation for the introduction of these objects into evidence.

## V

[4]   Defendant next assigns as error the admission of testimony by Queen Miller, corroborated by a police officer, which implicated defendant in a criminal offense separate and distinct from the offense for which he was charged. Queen related incidents in which the defendant acted abusively toward her by threatening to hit her in the head with a hammer, knocking a cigarette out of her hands, stating that he was going to "pull her eyes out," threatening to cut her face with a glass, and forcing

her to stay the night with him. These events began on Thursday, 9 July, and continued through the Sunday before the alleged assault on Barbara Miller on Monday, 13 July.

Defendant is correct that in a criminal trial the State cannot introduce evidence of other offenses if its only relevancy is to show the character of the accused or his disposition to commit the type of crime for which he is on trial. *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364 (1954). However, we find no error in the admission of this testimony since it was relevant to show defendant's aggressive and abusive attitude immediately preceding the assault on Barbara Miller, and the chain of circumstances which led up to the incident for which defendant was charged. *State v. Falk,* 33 N.C. App. 268, 270, 234 S.E. 2d 768, 770 (1977); *see State v. Harrill,* 35 N.C. App. 222, 241 S.E. 2d 94 (1978).

## VI

[5] Defendant next contends that the witnesses, Officers E. R. Williams and K. D. Williams, should not have been allowed to testify since their names were not provided upon discovery. Since the record on appeal contains no indication that the defendant complied with the discovery procedures outlined in Article 48 of N.C. Gen. Stat. Chapter 15A, we hold that the State was under no duty to tender the names of these men to defendant as potential witnesses. *See, State v. Lang,* 46 N.C. App. 138, 264 S.E. 2d 821, *reversed on other grounds,* 301 N.C. 508, 272 S.E. 2d 123 (1980). This assignment of error is without merit.

## VII

[6] Defendant also objects to the trial court's denial of his motion to suppress the evidence of the yellow towel and shotgun found in the search of the silver-blue station wagon. The trial judge held a *voir dire* and made, in pertinent part, the following findings of fact:

(1) That on or about the fourteenth day of July, 1981, Officer K. D. Williams had information for the location of the defendant, Jerry Rogers McMillan, furnished to him, including that Jerry Rogers McMillan may be in a maroon over black Monte Carlo automobile or a silver blue station wagon.

. . . .

(3) Within five minutes after locating said Chevrolet vehicle, a silver blue or blue or blue and brown Oldsmobile station wagon pulled up along side the Chevrolet vehicle, and Officer K. D. Williams then inquired of one Al Springs, the operator of said station wagon, as to the ownership of said vehicle.

. . . .

(5) Officer K. D. Williams further inquired of Mr. Al Springs if he had seen or been with the defendant, Jerry Rogers McMillan, and was informed by Mr. Al Springs that Mr. McMillan had been in the vehicle a short period of time before the officer had approached the station wagon.

(6) Officer K. D. Williams inquired of the operator of said vehicle, Mr. Al Springs, "Do you mind if we search the car?" to which Mr. Al Springs replied, "Okay."

(7) That pursuant to said search, Officer K. D. Williams found a bag in the rear portion of the station wagon in which he discovered a shotgun wrapped in a yellow towel.

(8) There is no evidence before the Court that the defendant, Jerry Rogers McMillan, had any possessory interest in the said Oldsmobile station wagon, nor did he have any right to the privacy of the contents of said station wagon, protected under the Constitution of the State of North Carolina or of the Constitution of the United States.

Based on the foregoing Findings of Fact, the Court concludes as a matter of law that Officer K. D. Williams had probable cause to search the Oldsmobile station wagon; (2) that the shotgun wrapped in a yellow towel discovered therein was obtained by a lawful search based upon probable cause and that the defendant's constitutional rights were not violated, either under the Constitution of the State of North Carolina or of the Constitution of the United States.

Contrary to defendant's argument, there was ample evidence in the record to support these findings. First, "[a] warrantless search of a vehicle is justified where the officer has probable cause to believe that the search will reveal evidence pertaining to the crime." *State v. Jefferies and State v. Person,* 41 N.C. App.

95, 99, 254 S.E. 2d 550, 554, *application for further review denied,* 297 N.C. 614, 257 S.E. 2d 438 (1979). Officer Williams conducted a search of the car fitting the description given him by Queen Miller. Further, Al Springs, the driver of the car, told Officer Williams that defendant had been in the car a short time before the search.

Second, it is well-settled that a defendant has no ground to object to a search of a vehicle when one who is in possession and control of the vehicle freely and voluntarily consents to the search. *State v. Hamilton,* 264 N.C. 277, 141 S.E. 2d 506 (1965), *cert. denied,* 384 U.S. 1020, 16 L.Ed. 2d 1044, 86 S.Ct. 1936 (1966). The consent to search given to the police officer by Al Springs obviated any ground for objection to the search by defendant. The items seized following the search were properly admitted into evidence.

## VIII

[7] Defendant challenges, in his next assignment of error, the trial court's denial of his motion to dismiss the charge made at the conclusion of the State's evidence and his motion for directed verdict made at the close of all the evidence. Simply put, the evidence in this case is more than sufficient to present to the jury the charge of assault with a deadly weapon.

## IX

In his final assignment of error defendant contends that the trial court in its charge to the jury expressed an opinion that the State proved defendant's threat that he was going to blow Barbara Miller's head off with a shotgun. Nothing in the court's instructions supports this argument, and we find it to be completely without merit.

For the foregoing reasons, we find

No error.

Chief Judge MORRIS and Judge JOHNSON concur.